UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GLORIA A. ADDISON,** *et al.*[1]                                                 **PLAINTIFFS**

**v.**                                                  **CIVIL ACTION NO.**   1:21-cv-204-HSO-JCG

**TRANSAMERICA RETIREMENT
SOLUTIONS LLC f/k/a DIVERSIFIED
RETIREMENT CORPORATION;**                            **DEFENDANTS**
**KPMG LLP; DOES A-Z**

**TRANSAMERICA RETIREMENT SOLUTIONS, LLC'S
<u>NOTICE OF REMOVAL</u>**

1. Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Transamerica Retirement Solutions, LLC ("TRS") hereby gives notice of the removal of this action from the Circuit Court of Jackson County, Mississippi, where this action was commenced, to the United States District Court for the Southern District of Mississippi, Southern Division, the district embracing the place where this case is pending, on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). As demonstrated below, this action meets all of the requirements for removal as a "mass action" under CAFA. In support of this Notice of Removal, TRS states the following:

**<u>BACKGROUND</u>**

2. On April 7, 2021, 272 Plaintiffs filed a mass action Complaint in the Circuit Court of Jackson County, Mississippi, styled *Gloria Addison, et al. v. Transamerica Retirement Solutions LLC fka Diversified Retirement Corporation, et al.*, Case No. 2021-006.SR (Jackson Cty., Miss.)

---

[1] There are 272 named Plaintiffs listed in the Complaint in this action. A list of all named Plaintiffs is attached as Exhibit A to this notice of removal, and all named Plaintiffs are also listed in the caption of the Complaint, which is attached as Exhibit B.

(the "*Addison*" action).  The Complaint is attached hereto as Exhibit B, and pursuant to 28 U.S.C. § 1446(a), all other process, pleadings, and orders served upon TRS are attached as Exhibit C.[2]

3. Plaintiffs allege that they are current or former employees of the Singing River Health System ("SRHS"), who participated in the SRHS Employees' Retirement Plan and Trust (the "Plan"), or others, such as spouses or beneficiaries, who are entitled to vested benefits under the Plan.  Complaint ¶¶ 3-4, 10.  Plaintiffs each contend that they "have suffered an injury in fact" because they have not and/or will not receive all of the benefits under the Plan to which they are entitled.  *Id*. ¶ 3.  They assert various claims for relief against TRS based on its alleged role as a former "actuary and administrative firm" for the Plan from 2009-2014, and they assert claims against Defendant KPMG LLP ("KPMG") based its alleged role in providing "auditing services" for the Plan from 2009-2013.  *Id*. ¶¶ 15-16.

4. The Complaint alleges that, as a result of mismanagement, the failure of SRHS to make annual required contributions, and other alleged misconduct, as of 2013, the Plan was underfunded in an amount exceeding $83 million.  *See id*. ¶¶ 18-21.  As a result of a settlement in late 2014, SRHS agreed to pay into the Plan approximately $150 million pursuant to a 35-year payment schedule.  *Id*. ¶ 23.  But the Complaint alleges that, notwithstanding this payment, "the Plan was still less than 28% funded and would be depleted by the year 2025," and "there were insufficient funds in the Plan to pay 100% of the benefits promised to the Plan participants and/or beneficiaries, including Plaintiffs."  *Id*. ¶ 24.

5. As a result of this underfunding, the Complaint alleges that, effective April 12, 2018, benefits to the Plan's participants and beneficiaries were "cut by twenty-five percent (25%)"

---

[2] Exhibits 1 and 2 to the Complaint were filed under seal in the state court.  TRS will be filing a motion for leave to file these exhibits under seal in this Court.

and cost-of-living increases were suspended. *Id*. ¶ 25. The Complaint makes allegations and asserts claims against TRS and KPMG (collectively, "Defendants") seeking to hold the Defendants responsible for, among other things, the underfunding of the Plan and the 25% cut in benefits and elimination of cost-of-living increases.

6. In 13 counts, the Complaint asserts multiple claims against Defendants for alleged intentional tortious misconduct, breach of fiduciary duty, breach of contract, a constructive trust, and violations of the Mississippi Uniform Trust Act. The Complaint seeks punitive damages, unspecified compensatory damages, attorneys' fees, and other unspecified damages. *See* Complaint at p. 42 (Prayer for Relief).[3]

## TIMELINESS OF THE REMOVAL

7. TRS was served with the Complaint in the *Addison* action on May 14, 2021. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it has been filed within 30 days of service of the Complaint on TRS. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (notice of removal timely under 28 U.S.C. § 1446(b) if filed within 30 days after service of the complaint).

## DIVERSITY JURISDICTION

**A.    "Mass Actions" Under CAFA**

8.    Removal to this Court is proper because this Court has original jurisdiction over

---

[3] The description of Plaintiffs' claims and allegations in the Complaint and any analysis of the amount in controversy in this notice of removal reflect only what is placed at issue by accepting the allegations of the Complaint as true. TRS does not concede the validity of any of Plaintiffs' claims, nor does TRS acknowledge any liability to Plaintiffs whatsoever. TRS does not concede that Plaintiffs have standing to bring the claims asserted in this action. Nor does TRS concede that Plaintiffs can appropriately assert individual claims as their Complaint appears to assert claims belonging to the Plan and not to individuals. TRS expressly reserves all defenses and the right to challenge and contest all allegations and claims in the Complaint.

this "mass action" pursuant to 28 U.S.C. § 1332(d)(11).  Under CAFA, original jurisdiction exists if the litigation is a "class action" as defined by CAFA, "the matter in controversy exceeds the sum or value of $5,000,000," the amount in controversy for at least one plaintiff exceeds $75,000, and "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2), (d)(11)(B)(i).

9. A "mass action" is deemed a "class action" removable under CAFA if it otherwise meets the requirements of subsections (d)(2) to (d)(10) of 28 U.S.C. § 1332.  *See* 28 U.S.C. § 1332(d)(11)(A).

10. CAFA defines a "mass action" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  28 U.S.C. § 1332(d)(11)(B)(i).

11. The *Addison* action qualifies as a "mass action."  The Complaint asserts the claims of 272 Plaintiffs that are proposed to be tried jointly in a single action.  Plaintiffs allege that their claims are properly joined together under Rule 20(a) of the Mississippi Rules of Civil Procedure in part because this action allegedly presents "questions of law and fact common to all Plaintiffs."  Complaint ¶ 2.  All Plaintiffs assert identical causes of action in one Complaint, and all seek damages from the same Defendants.  Not a single Plaintiff asserts any facts or legal claims that differ from the facts or legal claims asserted by any other Plaintiff.  Accordingly, the *Addison* action meets the definition of a "mass action" under CAFA.  See 28 U.S.C. § 1332(d)(11)(B)(i).

**B.     The Minimal Diversity Requirement Is Satisfied**

12.    Minimal diversity exists when any one plaintiff has citizenship that is different from that of any one defendant. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014); 28 U.S.C. § 1332(d)(2)(A). Defendant TRS is a limited liability company. Pursuant to 28 U.S.C. § 1332(d)(10), for purposes of CAFA, TRS is an unincorporated association and it is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.   TRS is organized under the laws of Delaware with its principal place of business in New York.  Accordingly, TRS is a citizen of Delaware and New York.

13.    A majority of the 272 Plaintiffs joined in the Complaint are domiciled in and are citizens of Mississippi.  A minority of the Plaintiffs are citizens of Alabama, Louisiana, and other states.  Accordingly, at least one Plaintiff "is a citizen of a State different from any Defendant," and there is no question that minimal diversity exists in this action for purposes of CAFA.  28 U.S.C. § 1332(d)(2)(A).

**C.     The Amount In Controversy Requirements Are Satisfied**

14.    In a mass action, CAFA imposes two amount-in-controversy requirements, both of which are satisfied here.  The "aggregate amount in controversy" must exceed $5,000,000, exclusive of interest and costs. *Robertson v. Exxon Mobil Corp.* 814 F.3d 236, 239 (5th Cir. 2015); *see also* 28 U.S.C. § 1332(d)(2).  In addition, at least one plaintiff's claim must satisfy the $75,000 individual amount in controversy requirement.  *Robertson*, 814 F.3d at 239.  In its notice of removal, a Defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see also id.* at 87 (by borrowing the "short and plain statement" language from Rule 8(a), Congress intended "to simplify the pleading requirements for removal and to clarify that

courts should apply the same liberal rules [to removal allegations] that are applied to other matters of pleading") (internal quotations omitted); *Robertson*, 814 F.3d at 240 ("the court [may] make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim") (internal citations omitted).

15. The amount in controversy is calculated based on "'what the plaintiff is claiming ..., not whether the plaintiff is likely to win or be awarded everything he seeks.'" *See Robertson*, 814 F.3d at 240 (quoting *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010)) (other citations omitted).

### 1. The $5 Million Amount in Controversy Requirement Is Satisfied

16. Plaintiffs' Complaint in this case seeks to hold the Defendants responsible for an alleged shortfall in Plan assets that exceeded $83 million by 2013, and an across the board 25% reduction of benefits to "the Plan's participants and/or beneficiaries, including Plaintiffs" plus elimination of annual cost-of-living increases. Complaint ¶¶ 21, 25 (citing April 12, 2018 Order of the Chancery Court of Jackson, County, Mississippi, Case No. 2015-0060).

17. The April 12, 2018 Chancery Court Order cited in the Complaint (¶ 25) quantifies the underfunding of the Plan that caused the 25% reduction of benefits at $119 million:

> On April 3, 2018, [the Special Fiduciary] reported that, assuming no changes are made to the Plan, it now has $310,000,000 in liabilities, and assets of only $120,000,000 leaving a shortfall of $190,000,000. The present value of the [$150 million] settlement [payable over 35 years] is $71,000,000. If the settlement is approved and paid, that leaves a shortfall of $119,000,000.

*In re: Singing River Health Sys. Employees' Retirement Plan and Trust*, Consol. Cause Nos. 2014-2653, 2695, 2729, 2753; 2015-0001, 0027, 0030, 0060 (Jackson County, Chancery Ct., Miss.), Trust Preservation Order Modifying Terms of Pension Plan at p. 15, April 12, 2018 (Document No. 637). The Special Fiduciary's April 3, 2018 Report further explained:

>Said another way:  Even with the proposed settlement, and no other funds, the Special Fiduciary must find a way to reduce the benefits of the Plan by a present value of $119M in order to sustain the fund for the benefit of all participants.  These calculations correspond to the claim in a previous report that with the settlement the Plan would be approximately 59% funded.  These updated calculations put that percentage similarly at 61%.

*In re: Singing River, supra*, Report by Special Fiduciary Traci M. Christian (Doc. No. 634) at p. 1.

18.     Based upon the allegations of the Complaint, the amount now required three years later to retroactively restore past benefits that had been cut by 25% and to fund future benefits by an additional 25% into the future, plus the addition of cost-of-living increases, may exceed $119 million.

19.     Plaintiffs assert thirteen separate "Counts" in the Complaint, shotgun style, none of which are labeled as any particular common law or statutory cause of action.  Together, however, the allegations in these Counts make clear that the Plaintiffs are seeking to hold the Defendants responsible for the shortfalls under that Plan and the subsequent reduction in benefits for all Plan participants.  Plaintiffs also allege intentional misrepresentations and other intentional misconduct and seek punitive damages.

20.     Plaintiffs allege that the Defendants, including TRS, "acted intentionally and willfully with the purpose of causing damage to the Plaintiffs" and "damage and loss to the Plan." Complaint ¶ 88.  Plaintiffs further allege that the Defendants conduct was a "but for" cause of the Plan becoming underfunded.  Specifically, they contend that the Defendants "masked the Plan's underfunding status" and that "[b]ut for the interference by Defendants . . . SRHS would have carried out performance of its contract with the Plan's participants, including Plaintiffs, to properly fund the Plan."  *Id*. ¶ 90.

21. Plaintiffs seek to recover compensatory damages, punitive damages, pre- and post-judgment interest, and attorneys' fees. Complaint at p. 42 (Prayer for Relief). They also seek the creation of a "constructive trust for funds and monies wrongfully retained and converted by Defendants." *Id*. ¶ 102.

22. Based on Plaintiffs' allegations, the aggregate amount in controversy for compensatory damages alone is in excess of $100 million and easily exceeds $5 million.

23. Plaintiffs' demands for punitive damages and attorneys' fees put an additional amount in controversy. Assuming a 1:1 ratio of compensatory to punitive damages, Plaintiffs are facially seeking more than double the damages described above.[4]

24. Even if the Complaint were construed as seeking compensatory damages limited to the reduction in benefits only suffered by the 272 Plaintiffs, the $5 million aggregate amount in controversy requirement is still easily met. Among the 272 Plaintiffs, more than 180 were already in a pay status when the Plan benefits to all participants were reduced 25%. The loss of past benefits plus the present value of the reduction in benefits in the future to those 180 alone would exceed $10 million, without considering the cost-of-living increase, punitive damages, or attorneys' fees. Future benefits allocable to the remaining Plaintiffs would raise the total amount in controversy even further.

25. For all of these reasons, there is no question that CAFA's aggregate amount in controversy requirement of $5 million is easily satisfied.

---

[4] As noted above, *supra* note 3, TRS preserves all defenses and maintains that Plaintiffs are not entitled to these, or any damages in this action, but Plaintiffs have placed these amounts in controversy with their allegations and demands for relief in the Complaint.

### 2.    The Individual Amount in Controversy Requirement Is Satisfied

26.    The individual amount in controversy requirement is also satisfied here because more than one, if not all, of the Plaintiffs' individual claims exceed $75,000, exclusive of interest and costs.  First, there are multiple individual Plaintiffs whose benefit entitlement was high enough such that their claims for compensatory damages alone, which seeks the "past and future" loss of 25% of benefits under the Plan plus cost-of-living increases (Complaint at p. 42), exceeds $75,000 exclusive of interest and costs, even without considering their claims for punitive damages and attorneys' fees, which are also properly included in the amount in controversy.

27.    Among those Plaintiffs who were already receiving benefits when the 25% reduction in benefits took place, based on reasonable mortality assumptions, more than two dozen Plaintiffs have a benefit reduction amount in controversy in excess of $100,000, based solely on the present value of future monthly benefits, without taking into account their claims for past reduced benefits, the loss of annual cost-of-living adjustments, punitive damages, or attorneys' fees, all of which would significantly increase the individual amount in controversy for each Plaintiff.  Thus, there is no question that the individual amount in controversy amount is satisfied for purposes of CAFA.

28.    In addition, when viewed in the aggregate, $75,000 multiplied by 272 Plaintiffs produces a sum of $20,400,000.  Plaintiffs here are seeking entitlement to benefits based on restoration of retroactive compensation for the 25% benefit reduction and cost-of-living increases that were eliminated in April of 2018.  The $119 million deficit identified by the Special Fiduciary and confirmed by the Chancery Court, when divided among 272 Plaintiffs, exceeds by over five times the $75,000 individual amount in controversy requirement.[5]  It is plausible that, with the

---

[5] $119 million divided by 272 Plaintiffs is $437,500 per Plaintiff.

addition of punitive damages and attorneys' fees, the $75,000 amount in controversy is satisfied not only for some or many of the Plaintiffs, but for all named Plaintiffs in this action.

29. In sum, based on both the face of the Complaint and the additional factual allegations in this notice of removal, Plaintiffs' alleged damages plausibly exceed both the aggregate and individual jurisdictional thresholds required by CAFA for removal to this Court. *Robertson v. Chevron USA, Inc.*, No. 15-cv-874, 2016 WL 3667153, at *4 (E.D. La. July 11, 2016) (holding 157 plaintiffs' claims for damage to health and property from exposure to contamination from oil field pipe more likely than not exceed jurisdictional threshold).

**D.   Venue Is Proper**

30. Removal to this judicial district and division is proper under 28 U.S.C. § 1441(a) because it embraces Jackson County, Mississippi, in which this action was originally pending. In accordance with 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal is being filed promptly with the clerk of the Jackson County, Mississippi Circuit Court. TRS is also serving Plaintiffs' counsel with a copy of this Notice of Removal.

WHEREFORE, Defendant Transamerica Retirement Solutions, LLC hereby removes the *Addison* action from the Circuit Court of Jackson County, Mississippi to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

Dated:  June 11, 2021

Respectfully submitted,

*/s/ Markham R. Leventhal*
Markham R. Leventhal (MSB #101091)
mleventhal@carltonfields.com

OF COUNSEL:

Markham R. Leventhal (MSB #101091)
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104
mleventhal@carltonfields.com

Ashley Eley Cannady (MSB #101253)
J. Russell Dumas (MSB #105310)
BALCH & BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson Mississippi 39201
Telephone:  (601) 965-8180
acannady@balch.com
rdumas@balch.com

*Attorneys for Defendant*
*Transamerica Retirement Solutions, LLC*

## **CERTIFICATE OF SERVICE**

I, Markham R. Leventhal, hereby certify that on this 11th day of June, 2021, a true and correct copy of the foregoing document was served by electronic mail and First-Class United States Mail, postage prepaid, on all counsel or parties of record on the Service List below:

| | |
|---|---|
| James R. Reeves, Jr., Esq.<br>Matthew G. Mestayer, Esq.<br>Jennifer P. Burkes, Esq.<br>REEVES & MESTAYER, PLLC<br>P.O. Box 1388<br>160 Main Street<br>Biloxi, Mississippi 39530<br>Telephone:  (228) 374-5151<br>Facsimile:  (228) 374-6630<br>jrr@rmlawcall.com<br>mgm@rmlawcall.com<br>jpb@rmlawcall.com<br><br>*Attorneys for Plaintiffs* | Amelia Toy Rudolph, Esq.<br>Patricia Gorham, Esq.<br>EVERSHEDS SUTHERLAND (US) LLP<br>999 Peachtree Street, NE, Suite 2300<br>Atlanta, Georgia 30309<br>Telephone:  (404) 853-8797<br>amyrudolph@eversheds-sutherland.com<br>patriciagorham@eversheds-sutherland.us<br><br>*Attorneys for Defendant KPMG LLP*<br><br>R. David Kaufman, Esq.<br>BRUNINI, GRANTHAM, GROWER<br>   & HEWES, PLLC<br>The Pinnacle Building, Suite 100<br>190 East Capitol Street<br>Jackson, Mississippi 39201<br>Telephone:  (601) 948-3101<br>Facsimile:  (601) 960-6902<br>dkaufman@brunini.com<br><br>*Attorneys for Defendant KPMG LLP* |

*/s/ Markham R. Leventhal*
Markham R. Leventhal (MSB #101091)
mleventhal@carltonfields.com

126214811