# EXHIBIT B

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI

| | | | |
|---|---|---|---|
| GLORIA | A. | ADDISON | PLAINTIFFS |
| GARY | P. | ALLEN | |
| MICHAEL | T. | ALLEN | |
| DONALD | C. | ANDERSON | |
| PAUL | D. | ANDERSON | |
| SUSAN | | APPLEWHITE | |
| EVA | MAE | AUSTIN | |
| GEORGIA | | BANG | |
| MARJORIE | | BARGANIER | |
| MARILYN | A. | BARIA | |
| JOANN | | BASS | |
| CABRINA | H. | BATES | |
| MARIE | | BAYLIS | |
| ROBERT | G. | BAYLIS | |
| SUE | E. | BEAVERS | |
| SHELLEY | L. | BELLON | |
| BRENDA | | BENJAMIN | |
| Donna | | BEVINS | |
| SHEILA | | BISHOP | |
| ARTHUR | R. | BLAISDELL | |
| SUSAN | C. | BLALOCK | |
| MARLENE | | BOGAN | |
| JOHNNY | | BOWMAN | |
| BARBARA | | BOYKIN | |
| RUBY | | BRADLEY | |
| YOLANDA | B. | BRADLEY | |
| PATRICIA | ANN | BRASWEL | |
| DORETHA | | BRIDGES | |
| SHARYN | | BROOKS | |
| DONNA | B. | BROUN | |
| MARY | K. | BROWN, DCSD | |
| ALFREDA | R. | BROWNE | |
| DONNA | | BURKHALTER | |

| | | |
|---|---|---|
| KATHIE | M. | BURNETT |
| DOROTHY | S. | BURRAGE |
| DARRELL | C. | BYRD |
| PAMELA | | BYRD |
| STUART | | CAROTHERS |
| TAMERA | A. | CARTER |
| WAYNE | | CHANEY |
| BERT | | CHAPMAN, DCSD |
| EDITH | | CHAPMAN |
| JACQUELINE | I. | CHAPMAN |
| PATRICIA | A. | CHESTANG |
| DANA | M. | CLARK |
| LINDA | | CLAY |
| CARL | C. | CLOER, JR. |
| AQUILLA | | COCHRAN |
| MARGARET | "PEGGY" | COLE |
| DONNA | | COLEMAN |
| BEACHELL | | COLLINS |
| CHARLES | L. | COLLINS |
| DAVID | E. | COLVIN |
| IDA | | COLVIN |
| PATRICIA | | CONGLETON |
| ERNEST | B. | COOK |
| GARY | M. | COOK |
| BARBARA | | COOPER |
| WILLIAM | T. | CRENSHAW |
| GLORIA | S. | CREWS |
| GOWONA | | CROSBY |
| MARINELL | | CUMBEST |
| MARIE | K. | DAFFIN |
| CAROL | D. | DAVIS |
| CAROLE | | DAWSON |
| JENNIFER | | DELANEY-DAVIS |
| LYNDA | G. | DIAMOND |

| | | |
|---|---|---|
| MARY | K. | DIER |
| LINDA | J. | DOBBS |
| CAROL | A. | DOMINEY |
| CATHERINE | | DURHAM |
| BRENDA | H. | EDWARDS |
| JUDY | G. | ELLZEY |
| JOE | A. | FAGAN |
| SHERRY | | FAULK |
| WANDA | L. | FLECHAS |
| VIRGINIA | W. | FLEISCHMAN |
| MICHELE | | FLOWERS |
| WALTER | D. | FORMAN |
| JOSEPH | | FOSTER |
| JANINA | | FRANC |
| BEVERLY | | FRANZ |
| EDWARD | J. | FREY, JR. |
| GORDON | M. | GAETHE |
| EVELYN | | GAINES |
| DEBORAH | | GARRY |
| ELIZABETH | L. | GASKIN |
| JANICE | FIELDS | GIBBON |
| DONALD | R. | GILLAM |
| APRIL | D. | GINGERELLA |
| JOYCE | | GOFF |
| MARJORY | | GOFF |
| SUSAN | E. | GOFF |
| FRANCES | | GOINS |
| KIMBERLY | | GONZALEZ |
| DOROTHY | J. | GRAY |
| LILA | W. | GRAY |
| GINGER | | GREEN |
| VICKIE | | GREENOUGH |
| GREGORY | P. | GREER |
| JACKIE | D. | GREGOR |

| | | |
|---|---|---|
| AMY | | GREGORY |
| DENNIS | N. | GRIFFIN |
| ROSIE | | GRIFFIN |
| RETHA | J. | GUNTER |
| MITCHELL | | HAARALA |
| EDWARD | G. | HALL, III |
| CHRIS | | HALTERLEIN |
| CAROLINE | | HANNAH |
| FRANCES | | HANNAH |
| ELEANOR | S. | HARE |
| ROBIN | | HARRELL |
| DELORIS | | HARVEY |
| CHERYL | A. | HATTEN |
| GREGORY | M. | HATTEN |
| ELVIS | W. | HAVARD |
| RAMONA | | HAVARD |
| NANCY | S. | HAVELIN |
| PAULA | M. | HEDGE |
| JENNYE LOU | W. | HEIDELBERG |
| JOANN | | HENDERSON |
| DEBORAH | | HENLEY |
| GERALD | D. | HENLEY, JR. |
| TERESA | H. | HENLEY |
| JANE | C. | HICKSON |
| ROBERT | D. | HICKSON |
| JULIA | SUZAN | HILLEBRAND |
| CAROLYN | | HILTON |
| DARRYL | M. | HOLLAND |
| PAULA | G. | HOLLAND |
| HUEY | J. | HOOVER |
| SANDRA | G. | HOOVER |
| RUTH | | HOPKINS |
| CAROLYN | A. | HORTON |
| LINDA | S. | HOWARD |

| | | |
|---|---|---|
| MARSHA | F. | HOWARD |
| FREDERICK | | HOWELL |
| EDGAR | | HULL |
| DELORIS | | HUNT |
| JANICE | L. | JACKSON |
| BARBARA | | JAMES |
| KAREN | R. | JENKINS |
| INA | | JENNE |
| LEIGH | A. | JOHNSON |
| BARBARA | | JONES |
| CECILE | N. | JONES |
| CHERRI | S. | JONES |
| GRADY | C. | JONES, DCSD |
| DORIAN | | JONES |
| EMMA | H. | JONES |
| THOMAS | C. | JONES |
| HOLLY | N. | KALLSTEN |
| MICHAEL | | KEMPNER |
| MICHAEL | | KILPATRICK |
| COLLEEN | | KING |
| LUCI | | KNOTTS |
| MICHAEL | | KNOTTS |
| DEBRA | | KNOWLES |
| JOSEPH | H. | LASSERRE, III |
| CAROL | E. | LASSITER |
| VIRGINIA | | LAY |
| CHARLES | W. | LEE |
| ELLA | P. | LEE |
| RICHARD | | LEWIS |
| LINDA | R. | LINDSEY |
| DOROTHY | M. | LINTON |
| JOSEPH | C. | LOHFINK, III |
| LYNDA | R. | LOPER |
| CAMILLE | W. | LOTT |

| | | |
|---|---|---|
| JAMES | M. | LYNN |
| DEBORAH | A. | MAJURE |
| JAMES | M. | MAJURE |
| CALLIE | POLK | MARSHALL |
| DEBRA | A. | MARTIN |
| MILDRED | | MARTIN |
| JAMES | | MATHEWS |
| THERESA | A. | MATHEWS |
| CLARISSA | L. | McCANN |
| MAGGIE | | McCORVEY |
| LOIS | J. | McCRORY |
| KELLIE | | MESTAYER |
| LINDA | F. | MILES |
| SHERMAN | M. | MILLER |
| SHIRLEY | F. | MILLER |
| VICKIE | | MITCHELL |
| DEANNA | | MORAIS |
| RICHARD | S. | MORGAN |
| BRENDA | | MOULDS |
| SHARON | | NATIONS |
| LINDA | D. | NELSON |
| SUZETTE | | NELSON |
| VICKIE | A. | NEVELS |
| WANDA | | NICHOLAS |
| ERNESTINE | | NICHOLSON |
| VICKIE | | NOBLE |
| DAVID | R. | OSWALT |
| JODY | | PARKER |
| RANDALL | | PARKER |
| TERESA | | PARKER |
| JO ANN | | PARNELL |
| REBECCA | A. | PEARSON |
| KATHLEEN | | PEREZ |
| TAMMY | | PETROVITZ |

| | | |
|---|---|---|
| ERNEST | T. | PIGOTT |
| ALETA | | PILUTTI |
| DAVID | THOMAS | PINTER |
| MARY | NENA | PINTER |
| KAREN | | POOLE |
| BOBBIE | | PORTER |
| ALLAN | | QUINN |
| DENISE | M. | RAJNIC |
| CYNTHIA | L. | RAWLINGS |
| ERIC | G. | REED |
| KAREN | | REEVES |
| MICHAEL | | REEVES |
| TERESA | | REYNOLDS |
| WANDA | G. | REYNOLDS |
| PATRICIA | G. | RICE |
| PERRY | J. | RICKS |
| DWIGHT | L. | RIMES |
| ANDREA | D. | ROANE |
| DEBRA | | ROBERTS |
| LINDA | | ROBINSON |
| RUBY | D. | ROSS |
| JACKIE | | ROWAN, JR. |
| DYANN | | SABINO |
| MARY | H. | SAUCIER |
| RICHARD | M. | SAUCIER |
| ANITA | | SCOTT |
| DAVID | F. | SCOTT |
| BARBARA | | SEYMOUR |
| DEBORAH | | SEYMOUR |
| JOYCE | | SHANNON |
| JOANN | | SHORKLEY |
| ROBERT | D. | SHOTLANDER |
| HOLLY | B. | SHUMATE |
| WILLIAM | C. | SHUMATE, JR. |

| | | |
|---|---|---|
| GLENDA | | SMITH |
| NANCY | A. | SMITH |
| DELMER | L. | SNOOK |
| MARILEE | | SNYDER |
| HERMAN | S. | SOARES |
| ALBERT | C. | STALLWORTH |
| JANIE | M. | STEWART |
| PAULA | J. | STOKES |
| SHERRY | | STORK |
| LEROY | "CRAIG" | SUMMERLIN |
| TONYA | | TART |
| SHARON | J. | THAMES |
| HAZEL | R. | THOMAS |
| DEBORAH | | TOWNSEND |
| REBECCA | | TREHERN |
| CAROL | | VARDELL |
| BARBARA | | VICKERY |
| RACHEL | | VOELKEL |
| LINDA | D. | WALLEY |
| KATHERINE | | WALTERS |
| NATHANIEL | D. | WALTON |
| REBECCA | L. | WALTON |
| VANESSA | | WATKINS |
| BRENDA | A. | WEBB |
| ROBIN | | WEIGLE |
| JOHN | S. | WELDON, M.D. |
| MAZIE | L. | WELLS |
| SHELIA | | WELLS |
| BEVERLY | | WHAVERS |
| RHONDA | | WHITE |
| RICKEY | E. | WHITE |
| LISA | | WILKERSON |
| HATTIE | M. | WILLIAMS |
| PATRICIA | | WILLIAMS |

**SHIRLEY**          **WILLIAMS**

**VERSUS**         **CIVIL ACTION NO.** _2021-006.SR_

**TRANSAMERICA RETIREMENT SOLUTIONS LLC fka**    **DEFENDANTS**
**DIVERSIFIED RETIREMENT CORPORATION; KPMG**    FILED
**LLP; DOES A-Z**    MASS TORT

**COMPLAINT**    APR 07 2021

**JURY TRIAL REQUESTED**    RANDY CARNEY, CLERK
    BY_____ ·D.C.

Come now Plaintiffs, by and through their undersigned counsel of record Reeves & Mestayer, PLLC, and file this Complaint against Defendants Transamerica Retirement Solutions LLC, fka Diversified Retirement Corporation; KPMG LLP; and Does A-Z, as follows:

## JURISDICTION AND VENUE

1.  This Court has personal jurisdiction over Defendants Transamerica Retirement Solutions LLC fka Diversified Retirement Corporation (hereafter "Transamerica"), KPMG LLP (hereafter "KPMG"), and Does A-Z as Plaintiffs' causes of action arose from and are connected to Defendants' purposeful acts committed in Jackson County, Mississippi. In addition, Defendants have registered to transact business in the State of Mississippi and conducted continuous and systematic business in the State of Mississippi and in Jackson County, Mississippi. In particular, Defendants intentionally transacted business in Jackson County, Mississippi, with respect to the matters at issue in this Complaint. This Court has jurisdiction of this matter under the Mississippi Constitution, Article 6, § 156, and Miss. Code Ann. § 9-7-81. Plaintiffs make

no claims under federal law and no claims that arise under the Constitution, laws, or treaties of the United States.

2.    Venue is proper for each Plaintiff named herein under Miss. Code Ann. § 11-11-3 since substantial acts or omissions giving rise to this action occurred in Jackson County, Mississippi, and/or a substantial event that caused the injury to each Plaintiff occurred in Jackson County, Mississippi. Joinder is proper under MRCP 20(a) as all claims asserted herein arise out of the same transactions, occurrences, or series of transactions or occurrences, and questions of law and fact common to all Plaintiffs will arise in this action.

3.    Plaintiffs have standing to file this Complaint. By Order of the Chancery Court of Jackson County, Mississippi, Case No. 2015-0060, dated September 14, 2020, the Special Fiduciary was authorized to abandon her claims against these Defendants and permit Plaintiffs to file their own cases. An Order of the Circuit Court of Jackson County, Mississippi, Civil Case No. 2017-087.SR, extended a stay in that proceeding to allow vested beneficiaries of the Plan to file individual actions of their own against these Defendants. Plaintiffs have suffered an injury in fact as Plaintiffs have not received and/or will not receive vested benefits to which Plaintiffs are entitled pursuant to the Singing River Health Systems Employees' Retirement Plan and Trust (hereafter "the Plan").

## PARTIES

4.    Plaintiffs are current or former employees of Singing River Health System (hereafter "SRHS") who participated in the Plan, or their spouses, alternate payees, death beneficiaries, or any other person to whom a benefit may be owed pursuant to the

10

Singing River Health Systems Employees' Retirement Plan and Trust (hereafter referred to as "the Plan").

5.    Defendant KPMG is a limited liability partnership formed in the State of Delaware that is authorized to do business in the State of Mississippi and is and was, at all relevant times, doing business in the State of Mississippi. KPMG is a resident of the State of Mississippi as its general partner, J. Murray Underwood, resides in Mississippi. KPMG may be served with process and a copy of this Complaint by serving its registered agent for service of process, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or by service upon its General Partner J. Murray Underwood at One Jackson Place #1100, 188 E. Capitol Street, Jackson, Mississippi 39201.

6.    Defendant Transamerica is a limited liability company formed in the State of Delaware and is and was, at all relevant times, doing business in the State of Mississippi.  Transamerica may be served with process and a copy of this Complaint by serving its registered agent for service of process, CT Corporation, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

7.    Does A-E are fictitious corporations, entities or persons whose real names and business addresses are unknown to Plaintiffs at this time, but whose real names and addresses will be made part of this Complaint at such time as they become known to Plaintiffs, and at which time process of this Court may be served on such parties. The Defendants' negligent, intentional, and/or fraudulent conduct was a proximate cause of Plaintiffs' injuries and damages.

11

8.   Does F-R are fictitious corporations, entities or persons whose real names and business addresses are unknown to Plaintiffs at this time, but whose real names and addresses will be made part of this Complaint at such time as they become known to Plaintiffs, and at which time process of this Court may be served on such parties. These Defendants were negligent in their actuarial duties and administrative duties in determining the annual required contribution to be paid by SRHS to the Plan to ensure its funding status and financial integrity.

9.   Does S-Z are fictitious corporations, entities, or persons whose real names and business addresses are unknown to Plaintiffs at this time, but whose real names and addresses will be made part of this Complaint at such time as they become known to the Plaintiffs, and at which time process of this Court may be served on such parties.  These Defendants provided auditing services to provide information about the Plan's present and future ability to pay benefits when due and further audited its own financial statements to provide information about SRHS's financial status, including but not limited to accounts receivable.

## FACTUAL ALLEGATIONS

10. Plaintiffs are current or former employees of SRHS who participated in the Plan, or their spouses, alternate payees, death beneficiaries, or any other person to whom a benefit may be owed pursuant to the Plan and are vested beneficiaries of the Plan (hereafter collectively referred to as "beneficiaries").

11. Prior to 1983, SRHS participated in the Public Employees' Retirement

System of Mississippi ("PERS") in order to provide retirement benefits to its employees. In 1983, SRHS withdrew from PERS and established the Plan, which was a self-administered retirement plan for its employees.

12.  The Plan was a defined benefit plan, not a defined contribution plan, and set forth a formula by which each employee's retirement benefits would be calculated based on a percentage of the employee's average compensation multiplied by the employee's years of credited service.

13.  The Plan was amended several times but as of October 1, 2007, the Plan required all SRHS employees to contribute three percent (3%) of their wages to the Plan. This 3% was automatically deducted from the employees' wages. The Plan also stated that SRHS shall make such contributions which shall be necessary, as determined by an actuary, to provide the benefits under the Plan.

14.  SRHS employed professional advisors, including accountants, auditors, and actuaries, to advise it regarding the Plan and to determine the amounts to be contributed by SRHS to provide the benefits guaranteed by the Plan and to ensure that the Plan was properly funded and administered.

15.  At all relevant times, including from 2009 to 2014, SRHS employed Transamerica (previously known as Diversified) to serve as the Plan's actuary and administrative firm. In particular, SRHS retained Transamerica to determine the annual required contribution to be paid by SRHS to the Plan to ensure its funding status and financial integrity and to administer the Plan, including but not limited to providing reports to the Plan's participants about benefits they could expect to receive upon retirement.

13

16. At all relevant times, including from 2009 to 2013, SRHS employed KPMG to provide auditing services for the Plan. In particular, SRHS retained KPMG to audit the Plan's financial statements to provide information about the Plan's present and future ability to pay benefits when due. SRHS also employed KPMG to audit its own financial statements to provide information about SRHS's financial status, including but not limited to accounts receivable.

17. In 2013, SRHS replaced KPMG with Horne, LLP. Horne conducted its audit and discovered that KPMG's prior annual audits had resulted in an $88 million overstatement of SRHS's accounts receivable.

18. From 2009 to 2014, SRHS failed to make all but one of its annual required contributions to the Plan. SRHS maintains that its decision to stop making its annual required contributions to the Plan was based upon information and data it received from Defendants.

19. From at least 2009 through 2014, Defendants, and each of them, knew or should have known that the Plan was or would become financially insecure and eventually be unable to provide the retirement benefits promised to Plaintiffs.

20. During the time that Defendants were performing services for the Plan and its participants, the funding ratio of the Plan dropped to critically low levels:

| FISCAL YEAR | FUNDING RATIO | REQUIRED SRHS CONTRIBUTION | ACTUAL SRHS CONTRIBUTION |
|---|---|---|---|
| 10/01/06 | 93.4% | $2,065,045 | $5,300,000 |
| 10/01/07 | 97.8% | $2,306,420 | $2,600,000 |
| 10/01/08 | 73.9% | $2,650,513 | $2,600,000 |
| 10/01/09 | 72.3% | $4,522,625 | $2,000,000 |

14

| 10/01/10 | 77.0% | $4,409,160 | $0 |
| 10/01/11 | 76.6% | $7,283,090 | $0 |
| 10/01/12 | 63.2% | $8,964,565 | $0 |
| 10/01/13 | 62.14% | $11,434,823 | $0 |

21. As of 2013, the unfunded actuarial liability of the Plan, according to Defendants' own calculations, was a staggering $83,051,146.

22. Despite the annual drop in the Plan's funding ratio and the unfunded actuarial liability of the plan, Defendants, and each of them, continually represented to the Plan's participants, including Plaintiffs, that the Plan was financially secure.

23. In or around December 2014, SRHS announced that the Plan would be frozen and liquidated. SRHS was enjoined from liquidating the Plan, and it subsequently agreed to pay $149,950,000 to the Plan over a 35-year payment schedule.

24. Despite this payment plan from SRHS, the Special Fiduciary determined in early 2018 that the Plan was still less than 28% funded and would be depleted by the year 2025. In addition, there were insufficient funds in the Plan to pay 100% of the benefits promised to the Plan's participants and/or beneficiaries, including Plaintiffs. The Special Fiduciary determined that the only option was to cut benefits to the Plan's participants and/or beneficiaries, including Plaintiffs.

25. On April 12, 2018, pursuant to an Order of the Chancery Court of Jackson County, Mississippi, Case No. 2015-0060, the benefits to the Plan's participants and/or beneficiaries, including Plaintiffs, were immediately cut by twenty-five percent (25%) and the cost-of-living increases (often referred to as "the 13th check") were suspended.

## COUNT 1
## (AS TO ALL DEFENDANTS)

26. Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

27. Defendant Transamerica provided administrative services for the Plan, including the following:

   a. Domestic relations order qualification;

   b. Retiree administration, including completion of benefit election forms reflecting monthly benefits and tracking the Plan's participants in pay status and processing changes that impacted the payment of benefits; and

   c. Services to terminated vested Plan participants and alternate payees not in pay status.

28. Defendant Transamerica also provided additional services for the Plan, including the following:

   a. Actuarial services for the Plan, including:
      - Determining cash contribution pension expenses, financial disclosures, and pension liabilities under GASB 24 and 27
      - Delivering a comprehensive written valuation report
      - Providing information on legislative and regulatory changes
      - Meeting with SRHS to review and discuss results of the actuarial valuation report
      - Developing routine responses to the auditor's annual pension questionnaire;
      - Preparing benefits calculations
      - Preparing required minimum distribution reports
      - Determining employee eligibility and vesting.

   b. Non-standard actuarial services for the Plan, including retirement program analysis;

   c. Actuarial Project for a Retirement Program Analysis and Redesign, including:
      - Collect Plan information
      - Identify SRHS goals and objectives
      - Determine Plan design alternatives to pursue
      - Present detailed analysis

16

- Confirm transition strategy
- Select new design
- Communicate to Plan participants
- Implementation
- Review and monitor

d. Direct Plan participant support services, including:
- Online Defined Benefit (DBOL) for Plan participants
- Customer contact center
- Benefit calculations based on client provided data

e. Administrative services, including:

- Performing Plan level transaction processing
    - Contributions
    - Employer directed withdrawals
    - Fund transfers
- Assist in domestic relations orders
- Prepare Plan administration manual
- Prepare Plan level period fund statements
- Prepare and mail annual benefits statements to the Plan's participants
- Perform retiree/participant level transition processing
    - Establish and maintain retiree payment records
    - State and federal tax withholding
    - IRS Form 1099R reporting
    - IRS Form 945 reporting
    - Process deductions and supplemental payments on behalf of retirees
    - Conduct regular retiree death audits and work with SRHS to address overpayments and resolve payment issues.

29.  Defendant Transamerica was authorized to withdraw payments for its services from the Plan's assets.

30.  Defendant KPMG prepared audit reports of the financial statements of the Plan and the financial statements of SRHS for all relevant years, including 2009 through 2013.

31.  Defendants had a duty to use such skill, prudence, and diligence as

17

actuaries, auditors, and/or accountants of ordinary skill and capacity commonly possess and exercise in the performance of such services. This included a duty to ensure that the Plan was adequately funded.

32.  As part of their duties, Defendants prepared and distributed reports to SRHS, the Plan, and/or the Plan's beneficiaries. One of the reports completed each of the relevant years was an actuarial valuation report for the Plan, the purpose of which was to determine SRHS's annual required contribution to the Plan, annual costs for the Plan, the funding ratio for the Plan, and the unfunded actuarial liability of the Plan.

33.  In addition, Defendants provided statements to the Plan's participants, including Plaintiffs, purporting to represent the amounts each Plaintiff could receive upon retirement and estimating each Plaintiff's monthly benefit payable as of age 65. Defendants affirmatively represented in such statements that they had been carefully prepared to ensure that the statements were accurate and up-to-date.

34.  Defendants had a duty to the Plaintiffs, as the Plaintiffs were intended users of the reports and/or were reasonably foreseeable users of the reports completed by Defendants as their information and reports were, at all relevant times, available to Plaintiffs, and Plaintiffs are persons with whom SRHS may reasonably have been expected to supply such information and reports.

35.  These duties include, but are not limited to, compliance with Actuarial Standards of Practice (ASOP) as developed by the Actuarial Standard Board, including but not limited to ASOP Nos.1, 4, 6, 41, 44, and 51, as well as all common law and statutory duties.

36.  In additions, Defendants were required to perform their accounting

18

duties in accordance with Generally Accepted Auditing Standards ("GAAS"), Generally Accepted Government Auditing Standards ("GAGAS"), and Generally Accepted Accounting Principles ("GAAP").

37. Defendants' purpose in performing audits and reviews of the Plan's financial statements and information was to determine the Plan's present and future ability to pay benefits to the Plan's participants and/or their beneficiaries, including Plaintiffs, and to provide information to SRHS and the Plaintiffs that would be useful in assessing the Plan's present and future ability to pay benefits.

38. Defendants knew or should have known that Plaintiffs would rely on their reports to determine whether the necessary funds would be available to pay benefits when due.

39. Defendants were negligent and breached the duties they owed to Plaintiffs, including their duty to use reasonable care. These breaches include, but are not limited to, the following:

     a. Defendants had a conflict of interest as they retained by SRHS, not the Plan, to complete the actuarial valuation report for the Plan;

     b. Defendants failed to disclose to Plaintiffs that they had a conflict of interest and had been retained by SRHS, not the Plan, to complete the actuarial valuation report for the Plan;

     c. Defendants failed to disclose to Plaintiffs that although the Plan was authorized to pay their fees, they were employed by SRHS;

     d. Defendants failed to properly disclose to Plaintiffs that SRHS had not paid into the Plan its annual required contribution since 2009;

     e. Defendants failed to properly disclose to Plaintiffs that the Plan's funding status was underfunded;

f.  Defendants failed to properly disclose to Plaintiffs the Plan's historical status of being underfunded leading to an unfunded actuarial liability of 63.22% in 2012 and 62.14% in 2013;

g.  Defendants failed to properly disclose to Plaintiffs risks that were reasonably anticipated to affect the Plan's future financial status, including but not limited to SRHS's failure to pay its annual required contributions;

h.  Defendants failed to use clarity in preparing its reports, especially taking into account the intended users and/or reasonably foreseeable users of such reports;

i.  Defendants produced reports that purportedly listed the benefits that would be paid to each Plaintiff but failed to disclose the Plan's underfunded status or that SRHS had not paid its annual required contributions, thereby placing the Plan and the participants' benefits at risk;

j.  Defendants failed to certify that SRHS made its minimum contributions to the Plan;

k.  Defendants failed to ensure that SRHS increase its contribution to the Plan despite the Plan's funding status diminishing every year after 2009;

l.  Defendants erroneously calculated SRHS's annual required contributions to the Plan;

m. Defendants failed to ensure the financial stability of the Plan;

n.  Defendants prepared misleading statements that were sent by Defendants to Plan participants and/or beneficiaries annually;

o.  Defendants omitted important information regarding the lack of funding in the annual statement provided by Defendants to Plan participants and/or beneficiaries;

p.  Defendants issued reports stating that SRHS's contributions to the Plan were recognized when due, affirming SRHS's formal commitment to provide the contributions, and stating that SRHS had agreed to make contributions to the Plan sufficient to provide the Plan with assets with which to pay retirement benefits to Plan participants and/or beneficiaries even though Defendants knew, or should have known, that SRHS had failed to make such contributions since at least 2009;

q.  Defendants represented that SRHS contributed the remaining amounts necessary to fund the Plan at an actuarially determined rate even though

Defendants knew, or should have known, that SRHS had not made its required contributions to the Plan since prior to 2009;

r.  Defendants were overly optimistic in its estimate of amounts that would be collected by the hospital's Patient Financial Services and made basic calculation errors, and Defendants' calculations of the department's collection rate, instances of patient death or bankruptcy (which obstruct account collection) were removed from the denominator (the universe of possible collections), but left in the numerator (the amounts actually collected), which had the effect of assuming collection while failing to discount for non-collection;

s.  Defendants commingled Patient Financial Services bad debt recoveries with the department's collection from "good/unaged" accounts, thus vastly overstating the amounts properly categorized as bad debt recoveries and concealing the much lower rate, and Defendants could have easily avoided this error by reviewing the run rate (dollars actually collected per month) for bad debt accounts;

t.  Defendants erroneously credited an inflated $50 million in anticipated bad debt recovery, as described above, and combined it with $5 million in actual annual historical recovery, effectively, double counting bad debt recoveries;

u.  Defendants used a five-year overall calculation in its 2011 and 2012 audits, assuming collection rates at the same rate as earlier years (e.g., 2008), when, in fact, the hospital's collection rates had deteriorated markedly in subsequent years;

v.  Defendants distorted the allowance rate in its calculation of the hospital's allowance for doubtful accounts; the correct applicable rate was approximately 83%, which would have been revealed by testing all the subsequent balances by comparing the previous year's gross receivables to what was subsequently collected, but Defendants did not test the balances sufficiently, and used an incorrect rate of 79%, without taking proper steps, required by its profession, to corroborate it;

w.  Defendants calculated the hospital's reserves based only on closed/settlement accounts (i.e., those accounts that have been successfully worked and closed) and excluded accounts that historically remained open or unsettled, thereby artificially inflating the hospital's net receivables;

x.  Defendants allowed credit for Disproportionate Share Hospital ("DSH") payments, a government payment intended to subsidize treating Medicare and Medicaid patients, as bad debt collection, although DSH applies

generally and not to particular patient accounts, as well as accruing DSH payments as a receivable elsewhere, effectively crediting DSH payments twice;

y. Defendants allowed credit for Executive Health Resources ("ERR") recoveries of Recovery Audit Contractor ("RAC") recoupments (funds the hospital regained after confiscation by Medicare and Medicaid auditors) as both bad debt collection and a receivable, effectively crediting HER recoveries twice; and

z. Such other breaches as will be established at trial.

40. Defendants' breaches of its duties resulted in an $88 million overstatement of SRHS's accounts receivable.

41. Defendants' negligence masked the Plan's underfunding status, and had Defendants acted within the standard of care, SRHS would have known about the Plan's underfunding sooner and could have acted sooner to ensure the financial stability of the Plan.

42. Plaintiffs detrimentally relied on Defendants' representations and reports that the Fund was financially stable and that the benefits would be paid when due, including becoming or remaining employed by SRHS, continuing to contribute to the Plan, and/or not challenging the status of the Plan or its ability to pay retirement benefits.

43. As a proximate result of Defendants' breaches of its duties, Plaintiffs were injured and suffered damages, including but not limited to retirement benefit losses.

## COUNT 2
## (AS TO ALL DEFENDANTS)

44. Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

45. Defendants consented to become a fiduciary to the Plan and to Plaintiffs

22

when they agreed to provide, and did provide, administrative services, including the

following:

    a.  Domestic relations order qualification;

    b.  Retiree administration, including completion of benefit election forms reflecting monthly benefits and tracking the Plan's participants in pay status and processing changes that impacted the payment of benefits; and

    c.  Services to terminated vested Plan participants and alternate payees not in pay status.

46. Defendants also agreed to provide, and did provide, additional services for

the Plan, including the following:

    a.  Actuarial services for the Plan, including:
- Determining cash contribution pension expenses, financial disclosures, and pension liabilities under GASB 24 and 27
- Delivering a comprehensive written valuation report
- Providing information on legislative and regulatory changes
- Meeting with SRHS to review and discuss results of the actuarial valuation report
- Developing routine responses to the auditor's annual pension questionnaire;
- Preparing benefits calculations
- Preparing required minimum distribution reports
- Determining employee eligibility and vesting.

    b.  Non-standard actuarial services for the Plan, including retirement program analysis;

    c.  Actuarial Project for a Retirement Program Analysis and Redesign, including:
- Collect Plan information
- Identify SRHS goals and objectives
- Determine Plan design alternatives to pursue
- Present detailed analysis
- Confirm transition strategy
- Select new design
- Communicate to Plan participants
- Implementation
- Review and monitor

d. Direct Plan participant support services, including:
- Online Defined Benefit (DBOL) for Plan participants
- Customer contact center
- Benefit calculations based on client provided data

e. Administrative services, including:

- Performing Plan level transaction processing
    - Contributions
    - Employer directed withdrawals
    - Fund transfers
- Assist in domestic relations orders
- Prepare Plan administration manual
- Prepare Plan level period fund statements
- Prepare and mail annual benefits statements to the Plan's participants
- Perform retiree/participant level transition processing
    - Establish and maintain retiree payment records
    - State and federal tax withholding
    - IRS Form 1099R reporting
    - IRS Form 945 reporting
    - Process deductions and supplemental payments on behalf of retirees
    - Conduct regular retiree death audits and work with SRHS to address overpayments and resolve payment issues.

47. Defendants were authorized to withdraw payments for its services from the Plan's assets.

48. Defendants advised SRHS as to whether contributions should be made to the Plan from at least 2008 to 2014, and Defendants provided financial advice to SRHS with respect to its future ability to make-up its missed contributions to the Plan.

49. Defendants were, at all relevant times, fiduciaries to the Plan and its participants and/or beneficiaries, including Plaintiffs, as (a) their activities went beyond operating on their own behalf but were for the benefit of the Plan and its participants; (b) they had a common interest with the Plan and its participants and profited from the Plan's activities; (c) the Plan and its participants reposed trust in

Defendants; and/or (d) Defendants had dominion and/or control over the Plan and its participants.

50. Defendants owed a fiduciary duty to Plaintiffs, which included a duty to act solely on behalf of Plaintiffs' exclusive interest with the sole purpose of providing benefits to the Plan's participants and/or beneficiaries. This included a duty to ensure that the Plan was adequately funded and/or financially sound.

51. Defendants breached their fiduciary duty to Plaintiffs. Such breaches include, but are not limited to:

   a. Defendants had a conflict of interest as they retained by SRHS, not the Plan, to complete the actuarial valuation report for the Plan;

   b. Defendants failed to disclose to Plaintiffs that they had a conflict of interest and had been retained by SRHS, not the Plan, to complete the actuarial valuation report for the Plan;

   c. Defendants failed to disclose to Plaintiffs that although the Plan was authorized to pay their fees, they were employed by SRHS;

   d. Defendants failed to properly disclose to Plaintiffs that SRHS had not paid into the Plan its annual required contribution since 2009;

   e. Defendants failed to properly disclose to Plaintiffs that the Plan's funding status was underfunded;

   f. Defendants failed to properly disclose to Plaintiffs the Plan's historical status of being underfunded leading to an unfunded actuarial liability of 63.22% in 2012 and 62.14% in 2013;

   g. Defendants failed to properly disclose to Plaintiffs risks that were reasonably anticipated to affect the Plan's future financial status, including but not limited to SRHS's failure to pay its annual required contributions;

   h. Defendants failed to use clarity in preparing its reports, especially taking into account the intended users and/or reasonably foreseeable users of such reports;

   i. Defendants produced reports that purportedly listed the benefits that would be paid to each participant but failed to disclose the Plan's

25

underfunded status or that SRHS had not paid its annual required contributions, thereby placing the Plan and Plaintiffs' benefits at risk;

j.  Defendants failed to certify that SRHS made its minimum contributions to the Plan;

k.  Defendants failed to ensure that SRHS increase its contribution to the Plan despite the Plan's funding status diminishing every year after 2009;

l.  Defendants erroneously calculated SRHS's annual required contributions to the Plan;

m.  Defendants failed to ensure the financial stability of the Plan;

n.  Defendants prepared misleading statements that were sent by Defendants to Plan participants annually;

o.  Defendants omitted important information regarding the lack of funding in the annual statement provided by Defendants to Plaintiffs;

p.  Defendants issued reports stating that SRHS's contributions to the Plan were recognized when due, affirming SRHS's formal commitment to provide the contributions, and stating that SRHS had agreed to make contributions to the Plan sufficient to provide the Plan with assets with which to pay retirement benefits to Plan participants even though Defendants knew, or should have known, that SRHS had failed to make such contributions since at least 2009;

q.  Defendants represented that SRHS contributed the remaining amounts necessary to fund the Plan at an actuarially determined rate even though Defendants knew, or should have known, that SRHS had not made its required contributions to the Plan since prior to 2009;

r.  Defendants were overly optimistic in its estimate of amounts that would be collected by the hospital's Patient Financial Services and made basic calculation errors, and Defendants' calculations of the department's collection rate, instances of patient death or bankruptcy (which obstruct account collection) were removed from the denominator (the universe of possible collections), but left in the numerator (the amounts actually collected), which had the effect of assuming collection while failing to discount for non-collection;

s.  Defendants commingled Patient Financial Services bad debt recoveries with the department's collection from "good/unaged" accounts, thus vastly overstating the amounts properly categorized as bad debt recoveries and concealing the much lower rate, and Defendants could have easily

avoided this error by reviewing the run rate (dollars actually collected per month) for bad debt accounts;

t.  Defendants erroneously credited an inflated $50 million in anticipated bad debt recovery, as described above, and combined it with $5 million in actual annual historical recovery, effectively, double counting bad debt recoveries;

u.  Defendants used a five-year overall calculation in its 2011 and 2012 audits, assuming collection rates at the same rate as earlier years (e.g., 2008), when, in fact, the hospital's collection rates had deteriorated markedly in subsequent years;

v.  Defendants distorted the allowance rate in its calculation of the hospital's allowance for doubtful accounts; the correct applicable rate was approximately 83%, which would have been revealed by testing all the subsequent balances by comparing the previous year's gross receivables to what was subsequently collected, but Defendants did not test the balances sufficiently, and used an incorrect rate of 79%, without taking proper steps, required by its profession, to corroborate it;

w.  Defendants calculated the hospital's reserves based only on closed/settlement accounts (i.e., those accounts that have been successfully worked and closed) and excluded accounts that historically remained open or unsettled, thereby artificially inflating the hospital's net receivables;

x.  Defendants allowed credit for Disproportionate Share Hospital ("DSH") payments, a government payment intended to subsidize treating Medicare and Medicaid patients, as bad debt collection, although DSH applies generally and not to particular patient accounts, as well as accruing DSH payments as a receivable elsewhere, effectively crediting DSH payments twice;

y.  Defendants allowed credit for Executive Health Resources ("ERR") recoveries of Recovery Audit Contractor ("RAC") recoupments (funds the hospital regained after confiscation by Medicare and Medicaid auditors) as both bad debt collection and a receivable, effectively crediting HER recoveries twice; and

z.  Such other breaches as will be established at trial.

52.  As a result of Defendants' breach of their fiduciary duties, Plaintiffs were

harmed and suffered damages, including but not limited to loss of retirement benefits.

53. In breaching their fiduciary duties to the Plan and the Plaintiffs, Defendants acted with malice and/or gross negligence which evidenced a willful, wanton, or reckless disregard and entitling Plaintiffs to punitive damages.

## COUNT 3
## (AS TO ALL DEFENDANTS)

54. Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

55. The negligent acts of and/or breaches by Defendants, and each of them, disclose a reckless indifference to consequences without the exertion of any substantial effort to avoid them.

56. In carrying out these activities, Defendants, and each of them, acted willfully, wantonly, and/or with reckless disregard of the consequences to Plaintiffs.

57. As a result of the gross negligence of Defendants, and each of them, Plaintiffs were harmed and suffered damages, including but not limited to the loss of retirement benefits.

58. Defendants, and each of them, acted with malice and/or gross negligence which evidenced a willful, wanton, or reckless disregard and entitling Plaintiffs to punitive damages.

## COUNT 4
## (AS TO ALL DEFENDANTS)

59. Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

60. Defendants made misrepresentations or omissions of material and significant facts, including the following:

a. Defendants failed to disclose to Plaintiffs, that they had a conflict of interest;

b. Defendants failed to disclose to Plaintiffs that they were being paid from the Plan's funds but had been employed by SRHS;

c. Defendants failed to properly disclose to Plaintiffs that SRHS had not paid into the Plan its annual required contribution since 2009;

d. Defendants failed to properly disclose to Plaintiffs that the Plan's funding status was underfunded;

e. Defendants failed to properly disclose to Plaintiffs the Plan's historical status of being underfunded leading to an unfunded actuarial liability of 63.22% in 2012 and 62.14% in 2013;

f. Defendants failed to properly disclose to Plaintiffs risks that were reasonably anticipated to affect the Plan's future financial status, including but not limited to SRHS's failure to pay its annual required contributions;

g. Defendants failed to use clarity in preparing its reports, especially taking into account the intended users and/or reasonably foreseeable users of such reports;

h. Defendants produced reports that purportedly listed the benefits that would be paid to each participant but failed to disclose the Plan's underfunded status or that SRHS had not paid its annual required contributions, thereby placing the Plan and Plaintiffs' benefits at risk;

i. Defendants failed to certify that SRHS made its minimum contributions to the Plan;

j. Defendants issued reports stating that SRHS's contributions to the Plan were recognized when due, praising SRHS's formal commitment to provide the contributions, and stating that SRHS had agreed to make contributions to the Plan sufficient to provide the Plan with assets with which to pay retirement benefits to Plaintiffs even though Defendants knew, or should have known, that SRHS had failed to make such contributions since at least 2009;

k. Defendants represented that SRHS contributed the remaining amounts necessary to fund the Plan at an actuarially determined rate even though Defendants knew, or should have known, that SRHS had not made its required contributions to the Plan since prior to 2009;

l.   Defendants recommended that the Plan's participants, including Plaintiffs, continue to make their contributions to the Plan even though SRHS was not and the Plan was grossly underfunded;

m.   Defendants' audits of SRHS's financial statements resulted in an overstatement of SRHS's accounts receivable by $88 million; and

n.   Such other misrepresentations that may be established in discovery and proven at trial.

61.   In making these misrepresentations, Defendants failed to exercise that degree of diligence and expertise that the public, including Plaintiffs, is entitled to expect from actuaries, auditors, accountants and/or fiduciaries.

62.   Defendants' negligence masked the Plan's underfunding status and had Defendants acted within the standard of care, SRHS would have known about the Plan's underfunding sooner and could have acted sooner to ensure the financial stability of the Plan

63.   Plaintiffs reasonably relied on Defendants' misrepresentations and suffered damages as a direct and proximate result of such reliance, including but not limited to loss of retirement benefits.

### COUNT 5
### (AS TO ALL DEFENDANTS)

64.   Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

65.   Defendant Transamerica entered into contracts with SRHS, including but not limited to contractual agreements dated September 15, 2011, and attached hereto as Exhibit "1." Exhibit "1" is a true and correct copy of the relevant contract; however, the contract is being filed under seal as it is confidential and subject to a Protective

Order issued by the Chancery Court of Jackson County, Mississippi, Cause No. 2014-2753-NH, et al., dated June 23, 2015.

66. Pursuant to its Pension Services Agreement with SRHS, Defendant Transamerica agreed to provide services for the Plan, including the following:

    a. Actuarial services for the Plan, including:
- Determining cash contribution pension expenses, financial disclosures, and pension liabilities under GASB 24 and 27
- Delivering a comprehensive written valuation report
- Providing information on legislative and regulatory changes
- Meeting with SRHS to review and discuss results of the actuarial valuation report
- Developing routine responses to the auditor's annual pension questionnaire;
- Preparing benefits calculations
- Preparing required minimum distribution reports
- Determining employee eligibility and vesting.

    b. Non-standard actuarial services for the Plan, including retirement program analysis;

    c. Actuarial Project for a Retirement Program Analysis and Redesign, including:
- Collect Plan information
- Identify SRHS goals and objectives
- Determine Plan design alternatives to pursue
- Present detailed analysis
- Confirm transition strategy
- Select new design
- Communicate to Plan participants
- Implementation
- Review and monitor

    d. Direct Plan participant support services, including:
- Online Defined Benefit (DBOL) for Plan participants
- Customer contact center
- Benefit calculations based on client provided data

    e. Administrative services, including:
- Performing Plan level transaction processing
    - Contributions

31

- o  Employer directed withdrawals
- o  Fund transfers
- Assist in domestic relations orders
- Prepare Plan administration manual
- Prepare Plan level period fund statements
- Prepare and mail annual benefits statements to the Plan's participants
- Perform retiree/participant level transition processing
  - o  Establish and maintain retiree payment records
  - o  State and federal tax withholding
  - o  IRS Form 1099R reporting
  - o  IRS Form 945 reporting
  - o  Process deductions and supplemental payments on behalf of retirees
  - o  Conduct regular retiree death audits and work with SRHS to address overpayments and resolve payment issues.

67. Defendants were authorized to withdraw payment for their services from the Plan.

68. Pursuant to the DB Outsourcing Agreement, Defendant Transamerica agreed to provide additional administrative procedures for SRHS and specifically assumed fiduciary responsibility for services for the Plan's participants, including the following:

a.  Domestic relations order qualification;

b.  Retiree administration, including completion of benefit election forms reflecting monthly benefits and tracking the Plan's participants in pay status and processing changes that impacted the payment of benefits; and

c.  Services to terminated vested Plan participants and alternate payees not in pay status.

69. Upon information and belief, from 1978 until 2013, Defendant KPMG performed audits of SRHS's financial statements and, for all relevant time periods, audits of the Plan's financial statements pursuant to contracts between KPMG and

32

SRHS, including those attached hereto as Exhibit "2". Exhibit "2" is a true and correct copy of the relevant statement; however, the statement is being filed under seal as it is confidential and subject to a Protective Order issued by the Chancery Court of Jackson County, Mississippi, Cause No. 2014-2753-NH, et al., dated June 23, 2015.

70. In the alternative, at all relevant times, including from 2009 to 2014, Defendants, by their conduct and acts, represented to SRHS and to the Plan's participants, including Plaintiffs, that they were conducting their services pursuant to agreements with SRHS. In addition, Defendants' actions demonstrated an intention to carry out a contractual relationship with SRHS, and Defendants were paid and therefore received a benefit from the relationship.

71. Defendants' contracts with SRHS were entered into for the benefit of the Plaintiffs and/or the benefits to Plaintiffs were the direct result of the performance within the contemplation of Defendants and SRHS as demonstrated by the terms of their agreements. As such, the Plaintiffs are third party beneficiaries to the contracts between Defendants and SRHS.

72. Defendants owed a duty of good faith and fair dealing to Plaintiffs in the performance and enforcement of their contracts with SRHS, and Defendants had a duty to perform with the justified expectations of the Plaintiffs.

73. Defendants breached the contract(s), including as follows:

a. Defendants had a conflict of interest;

b. Defendants failed to disclose to Plaintiffs that they had a conflict of interest;

c. Defendants failed to properly disclose to Plaintiffs that SRHS had not paid into the Plan its annual required contribution since 2009;

33

d. Defendants failed to properly disclose to Plaintiffs that the Plan's funding status was underfunded;

e. Defendants failed to properly disclose to Plaintiffs the Plan's historical status of being underfunded leading to an unfunded actuarial liability of 63.22% in 2012 and 62.14% in 2013;

f. Defendants failed to properly disclose to Plaintiffs risks that were reasonably anticipated to affect the Plan's future financial status, including but not limited to SRHS's failure to pay its annual required contributions;

g. Defendants failed to use clarity in preparing its reports, especially taking into account the intended users and/or reasonably foreseeable users of such reports;

h. Defendants produced reports that purportedly listed the benefits that would be paid to each participant but failed to disclose the Plan's underfunded status or that SRHS had not paid its annual required contributions, thereby placing the Plan and Plaintiffs' benefits at risk;

i. Defendants failed to certify that SRHS made its minimum contributions to the Plan;

j. Defendants failed to ensure that SRHS increase its contribution to the Plan despite the Plan's funding status diminishing every year after 2009;

k. Defendants erroneously calculated SRHS's annual required contributions;

l. Defendants suggested options detrimental to the Plaintiffs, including but not limited to increasing employee contributions, freezing future accruals, reducing benefit multipliers, and/or reducing or eliminating cost of living allowances;

m. Defendants recommended that the Plan's participants, including Plaintiffs, continue to make their contributions to the Plan even though SRHS was not and the Plan was grossly underfunded;

n. Defendants issued reports stating that SRHS's contributions to the Plan were recognized when due, confirming SRHS's formal commitment to provide the contributions, and stating that SRHS had agreed to make contributions to the Plan sufficient to provide the Plan with assets with which to pay retirement benefits to Plan participants even though Defendants knew, or should have known, that SRHS had failed to make such contributions since at least 2009;

o. Defendants represented that SRHS contributed the remaining amounts necessary to fund the Plan at an actuarially determined rate even though Defendants knew, or should have known, that SRHS had not made its required contributions to the Plan since prior to 2009;

p. Defendants recommended that the Plan's participants, including Plaintiffs, continue to make their contributions to the Plan even though the Plan was grossly underfunded;

q. Defendants failed to prevent the Plan from becoming underfunded and at risk financially;

r. Defendants permitted the Plan to become underfunded and at risk financially;

s. Defendants performed audits of SRHS's financial statements that resulted in an overstatement of accounts receivable by $88 million; and

t. Such other breaches as may be identified through discovery and/or established at trial.

74. As a result of Defendants' breach of contract, and each of them, Plaintiffs were harmed and have sustained damages, including but not limited to loss of retirement benefits.

75. Defendants' breach of contract, and each of them, was the result of an intentional wrong and/or Defendants acted maliciously or with reckless disregard of the rights of Plaintiffs, and therefore Plaintiffs are entitled to punitive damages.

## COUNT 6
## (AS TO ALL DEFENDANTS)

76. Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

77. From at least 2009 through 2014, Defendants, and each of them, made certain representations to Plaintiffs, including but not limited to the following:

a. That they did not have any conflict of interest in preparing their reports for the Plan;

35

b.  That SRHS had paid its required contributions;

c.  That the Plan was not underfunded;

d.  That the Plan did not have a below recommended unfunded actuarial liability;

e.  That there were no reasonably anticipated risks that could affect the Plan's future financial status;

f.  That certain benefits would be paid to each participant upon retirement;

g.  That the Plan's participants and/or beneficiaries, including Plaintiffs, would receive certain benefits upon retirement and such benefits would be available to them;

h.  That the Plan's participants, including Plaintiffs, should continue to make their contributions to the Plan;

i.  That SRHS's contributions to the Plan were recognized when due;

j.  That SRHS was committed to providing contributions to the Plan;

k.  That SRHS had agreed to make contributions to the Plan sufficient to provide the Plan with assets with which to pay retirement benefits;

l.  That SRHS's contributions to the Plan were sufficient to fund the Plan in order to pay retirement benefits; and

m.  Such other representations as may be established in discovery and proven at trial.

78.  Defendants made these representations in writing including in their Actuarial Valuation Reports completed from 2009 through 2014; the Annual Defined Benefits Statements provided to each of the Plan's participants and/or beneficiaries, including Plaintiffs, from 2009 through 2014; and the audit reports it completed for the Plan and for SRHS from at least 2009 through 2013.

79.  These representations by Defendants were false and material, and at all relevant times Defendants knew they were false or was ignorant of their truth.

80. Defendants intended that their representations would be acted upon by the Plaintiffs and in the manner reasonably contemplated.

81. At all relevant times, Plaintiffs were ignorant of the falsity of Defendants' statements and rightfully and reasonably relied upon the truth of Defendants' statements.

82. As a consequence and proximate result of Defendants' false representations, Plaintiffs were injured and suffered damages, including but not limited to loss of retirement benefits.

83. Defendants' representations were the result of an intentional wrong and/or Defendants acted maliciously or with reckless disregard of the rights of the Plaintiffs, and therefore Plaintiffs are entitled to punitive damages.

### COUNT 7
### (AS TO ALL DEFENDANTS)

84. Plaintiffs reallege and incorporate by reference all facts and allegations in the preceding paragraphs.

85. At all relevant times, the Plan's participants, including the Plaintiffs, had a contractual relationship with SRHS where the Plan's participants would contribute 3% of their wages to the Plan and SRHS would contribute the actuarially determined amount to the Plan.

86. Defendants, and each of them, interfered with this contract.

87. The interference by Defendants, and each of them, with the contract caused SRHS not to perform its requirements while the Plan's participants, including Plaintiffs, performed their requirements.

88. Defendants, and each of them, acted intentionally and willfully with the

37

purpose of causing damage to the Plaintiffs, and their acts were done with the unlawful purpose of causing damage and loss to the Plan, without right or justifiable cause on their part.

89. Defendants' conduct masked the Plan's underfunding status and had KPMG properly conducted its audits, SRHS would have known about the Plan's underfunding sooner and could have acted sooner to ensure the financial stability of the Plan.

90. But for the interference by Defendants, and each of them, SRHS would have carried out performance of its contract with the Plan's participants, including Plaintiffs, to properly fund the Plan.

91. As a proximate result of the acts of Defendants, and each of them, Plaintiffs were injured and have sustained damages, including but not limited to loss of retirement benefits.

## COUNT 8
## (AS TO ALL DEFENDANTS)

92. Plaintiffs reallege and incorporate by reference all prior allegations in the preceding paragraphs.

93. Defendants, and each of them, represented facts to the Plaintiffs concerning the plan, including but not limited to, the funding of the Plan, whether SRHS was making the contributions required to sustain the Plan, and the financial stability of the Plan.

94. The Plan's participants were induced to commence and/or continue employment with SRHS and participate in the Plan in reliance on Defendants' false representations, thus changing their positions based upon such false representations.

38

95. Defendants, and each of them, should be estopped from denying the benefits promised to Plaintiffs under the Plan.

## COUNT 9
## (AS TO ALL DEFENDANTS)

96. Plaintiffs reallege and incorporate by reference all prior allegations in the preceding paragraphs.

97. Defendants, and each of them, made promises to Plaintiffs concerning the Plan, including, but not limited to, promises that the Plan was adequately funded and would be capable of paying the promised benefits to Plaintiffs.

98. Defendants, and each of them, intended that these promises would be relied upon, and Plan's participants were induced to commence and/or continue employment with SRHS and participant in the Plan in reliance on Defendants' false promises.

99. Refusal to enforce Defendants' promises as described above would sanction a fraud or otherwise result in an injustice.

100.    Defendants, and each of them, should be estopped from denying benefits promised to Plaintiffs under the Plan.

## COUNT 10
## (AS TO ALL DEFENDANTS)

101.    Plaintiffs reallege and incorporate by reference all prior allegation in the preceding paragraphs.

102.    Plaintiffs requests that a constructive trust for funds and monies wrongfully retained and converted by Defendants, and each of them, be created.

103.     Defendants had a fiduciary relationship to Plaintiffs and promised to ensure that the Plan was adequately funded so that Plaintiffs would receive all retirement benefits due to them.

104.     Plaintiffs relied on Defendants' promises and Defendants received money as a result of such reliance and were therefore unjustly enriched.

## COUNT 11
## (AS TO ALL DEFENDANTS)

105.     Plaintiffs reallege and incorporate by reference all prior allegations in the preceding paragraphs.

106.     The Retirement Trust created by the Plan is an express trust created for the benefit of all Plaintiffs.

107.     As an express trust, the Retirement Trust is subject to the provisions of the Mississippi Uniform Trust Act, Miss. Code Ann. § 91-8-101 et seq. (hereafter "MUTA"), effective July 1, 2014, as applicable for all existing trusts. Miss. Code Ann. § 91-8-106.

108.     MUTA establishes a statutory cause of action for a breach of trust. Miss. Code Ann. § 91-8-208(c)(13); § 91-8-1001(a).

109.     Mississippi common law of trusts and principles of equity supplement the statutory code except to the extent modified by MUTA or other Mississippi statutes. Miss. Code Ann. § 91-8-106.

110.     The Trustees of the Retirement Trust have, and at all relevant times had, a duty to administer the Trust such that all of its assets were delivered in good faith and in accordance with the Trust's terms and purposes and the interests of the

beneficiaries of the Trust, including Plaintiffs, and in accordance with MUTA and Mississippi common law. Miss. Code Ann. § 91-8-106; § 91-8-801.

111.    Defendants, and each of them, failed to act in good faith in assisting the Trust's trustees and/or in dealing with the Trust's trustees with knowledge that the Trust's trustees were exceeding and/or improperly exercising their powers. Miss. Code. Ann. § 91-8-1012.

112.    As a proximate result of Defendants' lack of good faith in dealing with the Trust's trustees, Plaintiffs suffered damages, including but not limited to, loss of retirement benefits, and seek costs and expenses, including attorneys' fees, as provided by MUTA. Miss. Code Ann. § 91-8-1004.

## COUNT 12
## (AS TO ALL DEFENDANTS)

113.    Plaintiffs reallege and incorporate by reference all prior allegations in the preceding paragraphs.

114.    At all relevant times, SRHS, Transamerica, and/or KPMG were aware that SRHS was not making the annual required contributions to the Plan and that the financial stability of the Plan was in jeopardy.

115.    This purposeful conduct was unlawful and/or fraudulent and agreed upon by the Defendants, and each of them.

116.    As a result of the Defendants' conducts, Plaintiffs sustained damages, including but not limited to loss of retirement benefits.

117.    Defendants' acts were intentional and/or Defendants acted maliciously or with reckless disregard of the rights of the Plaintiffs, and therefore Plaintiffs are entitled to punitive damages.

41

## COUNT 13
## (AS TO ALL DEFENDANTS)

118.     Plaintiffs reallege and incorporate by reference all prior allegations in the preceding paragraphs.

119.     The Defendants, and each of them, knew that another's conduct constituted a breach of duty but gave substantial assistance and/or encouragement to the other.

120.     As a result of the tortious conduct of Defendants, and each of them, Plaintiffs were harmed and sustained damages, including but not limited to loss of retirement benefits.

121.     Defendants' acts were intentional and/or Defendants acted maliciously or with reckless disregard of the rights of the Plaintiffs, and therefore Plaintiffs are entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants, and each of them, and that Plaintiffs be awarded the following damages:

1. All compensatory damages, past and future, to which Plaintiffs are entitled;

2. Punitive damages against Defendants, and each of them;

3. Pre-judgment interest;

4. Post-judgment interest;

5. Attorneys' fees and court costs to the extent permitted by law; and

6. Such other damages to which this Court determined Plaintiffs are entitled.

### JURY TRIAL DEMAND

Plaintiffs respectfully demand trial by jury.

42

## DOCUMENT PRESERVATION DEMAND

Plaintiffs demand Defendants, and each of them, preserve all documents,

electronically stored information, and tangible things that support any of Plaintiffs' claims

or Defendants' defenses pertaining to the allegations raised in this Complaint.

DATE:     April 7, 2021.

Respectfully submitted,

**REEVES & MESTAYER, PLLC**
James R. Reeves, Jr. (MS Bar No. 9519)
Matthew G. Mestayer (MS Bar No. 9646)
Jennifer P. Burkes, Of Counsel (MSB Bar No. 9420)
Post Office Box 1388
160 Main Street
Biloxi, MS 39530
Telephone: (228) 374-5151
Facsimile: (228) 374-6630
jrr@rmlawcall.com
mgm@rmlawcall.com
jpb@rmlawcall.com

**ATTORNEYS FOR PLAINTIFFS**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI

GLORIA ADDISON, ET AL.                                    PLAINTIFF

VS.                                    CIVIL ACTON NO. 2021-006.SR

TRANSAMERICA RETIREMENT SOLUTIONS
LLC fka DIVERSIFIED RETIREMENT
CORPORATION; KPMG LLP; DOES A-Z                DEFENDANTS


# EXHIBIT "1"

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI

GLORIA ADDISON, ET AL.                                                          **PLAINTIFF**

VS.                                              CIVIL ACTON NO. 2021-006.SR

TRANSAMERICA RETIREMENT SOLUTIONS
LLC fka DIVERSIFIED RETIREMENT
CORPORATION; KPMG LLP; DOES A-Z                              **DEFENDANTS**


# EXHIBIT "2"

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER