**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GLORIA A. ADDISON, et al.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil No. 1:21-cv-204-HSO-RHWR** |
| | § | |
| **TRANSAMERICA RETIREMENT** | § | |
| **SOLUTIONS LLC** *formerly known* | § | |
| *as* **DIVERSIFIED RETIREMENT** | § | |
| **CORPORATION; KPMG LLP; and** | § | |
| **DOES A-Z** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'**
**MOTION [17] TO REMAND TO THE CIRCUIT COURT OF JACKSON**
**COUNTY, MISSISSIPPI, AND DENYING PLAINTIFFS' REQUEST FOR**
**COSTS AND EXPENSES**

BEFORE THE COURT are the Motion [17] to Remand to the Circuit Court of

Jackson County, Mississippi, and for expenses and costs, and the Motion [22] to

Dismiss Counterclaim for Lack of Jurisdiction filed by Plaintiffs Gloria A. Addison,

et al. After due consideration of the Motions [17][22], the record, the pleadings, and

relevant legal authority, the Court finds that Plaintiffs' Motion [17] to Remand

should be granted, that this action should be remanded to the Circuit Court of

Jackson County, Mississippi, and that Plaintiffs' request for expenses and costs

should be denied.

## I.  BACKGROUND

### A.  Factual background

Plaintiffs in this case are 272 individuals who are all "current or former

employees of" Singing River Health System ("SRHS") "who participated in . . . or

their spouses, alternate payees, death beneficiaries, or any other person to whom a

benefit" may be owed under the SRHS Employees' Retirement Plan and Trust (the "Plan"). Compl. [1-2] at 11-12. Defendant Transamerica Retirement Solutions LLC ("Transamerica") was allegedly employed by SRHS from 2009 to 2014 as the Plan's "actuary and administrative firm," *id*. at 14, and Defendant KPMG LLP ("KPMG") was allegedly engaged by SRHS from 2009 to 2013 "to provide auditing services for the Plan," *id*. at 15.

The Complaint alleges that SRHS established the Plan in 1983 as "a self-administered retirement plan," for its employees. *Id*. at 14. The Plan was a defined benefit retirement plan that required, as of the last amendment on October 1, 2007, all SRHS employees to contribute three percent of their earnings. *Id*. To assist it in administering the Plan, SRHS hired several "professional advisors," including Transamerica and KPMG, to determine the amount SRHS needed to contribute "to provide the benefits guaranteed by the Plan and to ensure that the Plan was properly funded and administered." *Id*.

Plaintiffs claim that in 2013, SRHS hired Horne, LLP ("Horne"), a different accounting firm, to replace KPMG and perform auditing services for the Plan. *Id*. at 15. Horne performed an audit that uncovered an $88,000,000.00 overstatement in SRHS's accounts receivable, which the Complaint [1-2] alleges was attributable to KPMG's prior annual audits. *Id*.

The Complaint asserts that from 2009 to 2014, SRHS made only one of its required annual contributions to the Plan "based upon information and data it received from" Transamerica and KPMG (collectively "Defendants"). *Id*. During this

time period, the Plan is alleged to have dropped from 72.3% funded to 62.14% funded. *Id*. at 15-16. Plaintiffs maintain that "[d]espite the annual drop in the Plan's funding ratio and the unfunded actuarial liability of the plan," Defendants made continued representations to the Plan's participants "that the Plan was financially secure." *Id*. at 16. In or around December 2014, SRHS announced that the Plan would be frozen and liquidated. *Id*.

B.   <u>Procedural history</u>

Following SRHS's liquidation announcement, the Plan's participants sought injunctive relief in the Chancery Court of Jackson County, Mississippi (the "Chancery Court"), which entered an order preventing SRHS from terminating the Plan. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 289 (5th Cir. 2017) (explaining the procedural history). Shortly thereafter, numerous lawsuits were filed in state and federal court, including three putative class actions filed in this Court, which were eventually consolidated into one civil action. *See Jones v. Singing River Health Servs. Found.*, Nos. 1:14CV447-LG-RHW, 1:15CV1-LG-RHW, 1:15CV44-LG-RHW, 2015 WL 12672726, at *5 (S.D. Miss. June 5, 2015) (consolidating putative class actions). The plaintiffs in the consolidated action sued SRHS, as well as and among others, Transamerica and KPMG. *Jones v. Singing River Health Sys.*, 1:14CV447-LG-RHW, consolidated with 1:15CV1-LG-RHW, consolidated with 1:15CV44-LG-RHW, 2016 WL 6106521, at *2 (S.D. Miss. June 2, 2016). Ultimately, the Court approved a settlement of the plaintiffs' claims against

3

SRHS, but Transamerica and KPMG were excluded from this settlement. *Id*.[1]

In the meantime, the Chancery Court had appointed a special fiduciary to "take possession of the trust property and to administer the trust, including all plan assets and property." Am. Answer [20] at 25. The Chancery Court granted the special fiduciary "all power and authority" prescribed by the Plan and the Mississippi Uniform Trust Code, Miss. Code Ann. §§ 91-8-101, *et seq*. *Id*. at 26. As part of the settlement agreement in the federal court action, the plaintiffs and SRHS granted the Chancery Court the authority to oversee and monitor the Plan. *Jones*, 2016 WL 6106521, at *5.

The plaintiffs' claims against Transamerica and KPMG were severed into a separate action and eventually dismissed. *Jones v. KPMG L.L.P.*, No. 1:17CV319-LG-RHW, Order [1] (severing the plaintiffs' claims against Transamerica and KPMG); *Jones v. KPMG L.L.P.*, No. 1:17CV319-LG-RHW, Order [4] (compelling arbitration of one set of the plaintiffs' claims against KMPG); *Jones v. KPMG L.L.P.*, No. 1:17CV319-LG-RHW, 2019 WL 6895960, at *1 (S.D. Miss. Dec. 18, 2019) (dismissing the remaining plaintiffs' claims against KMPG); *Jones v. KPMG L.L.P.*, No. 1:17CV319-LG-RHW, Order [62] (dismissing the plaintiffs' claims against Transamerica). The Court dismissed the plaintiffs' claims against Transamerica and KPMG, except those subject to an arbitration agreement with KPMG, on grounds that "only the special fiduciary has authority to maintain lawsuits on

---

[1] The Fifth Circuit initially vacated and remanded the Court's Order approving the settlement, *Jones*, 865 F.3d at 303, but affirmed the Court's subsequent order approving the settlement after it addressed the Fifth Circuit's concerns in a subsequent hearing, *Jones v. Singing River Health Servs. Found.*, 742 F. App'x 846, 849-50 (5th Cir. 2018).

behalf of the Plan." *Jones*, 2019 WL 6895960, at \*2; *see also Jones v. KPMG L.L.P.*, No. 1:17CV319-LG-RHW, Order [62]. In support of this finding, the Court noted that the special fiduciary was pursuing litigation against both Transamerica and KPMG in state court. *Jones*, 2019 WL 6895960, at \*2; *see also Jones v. KPMG L.L.P.*, No. 1:17CV319-LG-RHW, Order [62].

On April 7, 2021, Plaintiffs Gloria A. Addison, et al. ("Plaintiffs") filed this action in the Circuit Court of Jackson County, Mississippi, naming Transamerica and KPMG as Defendants. Compl. [1-2] at 10. The Complaint alleges that Plaintiffs have standing to bring this litigation pursuant to a Chancery Court Order which authorized the special fiduciary "to abandon her claims against these Defendants and permit Plaintiffs to file their own cases." *Id*. at 11. According the Complaint, the special fiduciary in fact abandoned her claims, allowing Plaintiffs to initiate this lawsuit. *Id*.; Reply [38] at 12. The Complaint advances several causes action against both Defendants, including claims for: (1) negligence; (2) gross negligence; (3) breach of fiduciary duties; (4) breach of contract; (5) intentional interference with contract; and (6) failure to act in good faith in violation of the Mississippi Uniform Trust Act. *Id*. at 17-38, 41-43. Plaintiffs also request that Defendants be estopped from denying the benefits promised under the Plan and that a constructive trust be established. *Id*. at 39-41.

Transamerica removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Notice [1] at 1.  Transamerica contends that this case

satisfies the definition of a "mass action" under CAFA because the Complaint alleges that there are more than 100 plaintiffs whose claims have been properly joined and who assert claims based on common questions of law and fact. *Id.* at 4. Transamerica further maintains that CAFA's minimal diversity, aggregate amount in controversy, and individual amount in controversy requirements are all met based on the allegations in the Complaint. *Id.* at 5-10.[2] Transamerica has filed an Amended Answer [20], which asserts a Counterclaim against Plaintiffs for a declaratory judgment pursuant to 28 U.S.C. § 2201. Am. Answer [20] at 21. Transamerica seeks a declaratory judgment that it is not liable on any of the claims asserted by Plaintiffs or for any damages to the Plan. *Id.* at 21-43.

Plaintiffs have filed the present Motion [17] to Remand and for expenses and costs, arguing that this case does not fall within the definition of a "mass action" under CAFA and that, even if it does, an exclusion or exception to CAFA jurisdiction applies. Mem. [18] at 1. Plaintiffs have also filed a Motion [22] to Dismiss Transamerica's Counterclaim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). These Motions are fully briefed.

## II.  DISCUSSION

A.  Legal standards

28 U.S.C. § 1441 provides for the removal of civil actions brought in a state court where the district court has original subject-matter jurisdiction. 28 U.S.C.

---

[2] In lieu of responding to Plaintiffs' Complaint, KPMG filed in the state court action a Motion to Dismiss under Mississippi Rules of Civil Procedure 12(b)(1) and 12(b)(6). Ex. 3 [1-3] at 28. Under Local Uniform Civil Rule 5(b), all unresolved motions filed in state court must be filed as separate docket items in this Court. L.U. Civ. R. 5(b). KPMG has not filed its motion to dismiss in this Court and it did not file a response to Plaintiffs' Motions [17][22].

§ 1441(a). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). A federal court's jurisdiction is examined as of the time of removal. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

The CAFA affords federal district courts with original jurisdiction over "mass actions." 28 U.S.C. § 1332(d)(11); *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 408 (5th Cir. 2014). A "mass action" under CAFA is defined as any civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). A "mass action" is a removable class action "if it otherwise meets the provisions" of section 1332(d)(2)-(10). 28 U.S.C. § 1332(d)(11)(A). Accordingly, it must: "(1) satisfy CAFA's minimal diversity requirement (i.e., at least one plaintiff and one defendant must be citizens of different states); (2) have an amount in controversy exceeding $5,000,000; and (3) involve claims of monetary relief of at least 100 persons that involve common questions of law or fact,' and (4) 'at least one plaintiff must satisfy the individual amount in controversy requirement' of $75,000." *Addison v. La. Reg'l Landfill Co.*, 398 F. Supp. 3d 4, 10 (E.D. La. 2019) (alterations in original) (quoting *Greco v. Jones*, 992 F. Supp. 2d 693, 695 (N.D. Tex. 2014); *Hood ex rel. Misssissppi v. JP Morgan Chase & Co.*, 737 F.3d 78, 86 (5th Cir. 2013)).

However, even where the general mass action provisions are met, a court

must "decline jurisdiction over a proposed class action if either of the following narrow exceptions is proven by a preponderance of the evidence: (1) the local controversy exception, 28 U.S.C. § 1332(d)(4)(A); or (2) the home state exception, 28 U.S.C. § 1332(d)(4)(B)." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569-70 (5th Cir. 2011). The party seeking remand bears the burden of proving that an exception to CAFA jurisdiction applies. *Id.* (citations omitted).

B.    Analysis

1.    Plaintiffs' Motion [17] to Remand

Plaintiffs move to remand this case to state court, asserting three grounds in support: (1) that Transamerica has failed to establish that the individual amount in controversy requirement is satisfied; (2) that this action does not meet the definition of a "mass action" because the single event or occurrence exclusion applies; and (3) that the "local controversy" exception to CAFA jurisdiction applies.[3] Mem. [18] at 1. Transamerica responds that its Notice of Removal [1] sufficiently alleged that the individual amount in controversy requirement was satisfied, and alternatively submits evidence supporting its position on this issue. Mem. [26] at 4; *see also* Ex. 1 [25-1]. Transamerica also contends that neither the single event exclusion nor the local controversy exception applies. *Id.* at 4-5.

---

[3] The CAFA excludes certain actions from the definition of mass action in section 1332(d)(11)(B)(ii), and also recognizes certain "exceptions" in section 1332(d)(4). *See* 28 U.S.C. § 1332(d)(11)(A) ("[A] mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs."). The Fifth Circuit has recognized a distinction between "exclusions" and "exceptions." *See Rainbow Gun Club*, 760 F.3d at 408-09 (referring to one of the actions excluded from the definition of a mass action as an exclusion); *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 242 (5th Cir. 2015) (recognizing that there are both exclusions and exceptions to CAFA jurisdiction).

a.   Whether the individual amount in controversy requirement and mass action definition are met

Transamerica's Notice of Removal [1] alleges that at least one Plaintiff is a citizen of a state different from one of the Defendants, that the aggregate amount in controversy exceeds $5,000,000.00, that there are 272 Plaintiffs whose claims involve common questions of law and fact, and that "more than one, if not all, of the Plaintiffs' individual claims exceed" $75,000.00 exclusive of interest and costs. Notice [1] at 3-10. Plaintiffs do not contest the first three of these elements but argue that Transamerica has failed to establish the individual amount in controversy requirement, because it did not identify any named individual whose claim exceeds $75,000.00. Mem. [18] at 8-9.

As the removing party, Transamerica bears the burden of establishing by a preponderance of the evidence that the individual amount in controversy is satisfied. *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239-40 (5th Cir. 2015). The removing party can satisfy its burden "by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." *Id.* (citations omitted). Transamerica has submitted a declaration prepared by Francis Carberry ("Carberry"), "a Senior Consulting Actuary employed by Transamerica Life Insurance Company," who performs actuarial services for Transamerica. Ex. 1 [25-1] at 1; *see also* Fed. R. Civ. P. 56(c)(1)(A) (stating that summary judgment can be opposed or supported by "citing to . . . materials in the record, including . . . declarations").

Carberry reviewed the Complaint as well as Transamerica's business records,

which included "information relat[ing] to 182 plaintiffs." Ex. 1 [25-1] at 1-2.

Carberry identified one specific Plaintiff whose claim exceeds $75,000.00: Robert

Davis Hickson ("Hickson"). *Id*. at 3. Carberry explained her method for computing

the amount of Hickson's claim as follows:

> [u]sing the actuarial assumptions of the Plan, and based on
> [Transamerica] business records applicable to Mr. Hickson, his
> claim for damages equal to the 25-percent reduction in his
> retirement benefits would have a present value of approximately
> $179,212 as of July 1, 2021 for payments due on or after that date.
> In addition, his alleged claim for restoration of prior payments that
> were reduced by 25% would be approximately $69,219. Accordingly,
> Mr. Hickson's total individual claim relating to the 25% reduction of
> benefits would be approximately $248,431.

*Id*. at 3-4; *see also* Compl. [1-2] at 16 (explaining that the Plan's benefits were cut by

25% pursuant to a Chancery Court order). Plaintiffs neither argue that Carberry's

calculations are incorrect nor do they present any evidence challenging them.[4] The

Court finds that Transamerica has satisfied its burden to show that at least one

Plaintiff, Robert Davis Hickson's, claim exceeds $75,000.00 exclusive of interest and

---

[4] Instead, Plaintiffs assert that Transamerica cannot satisfy the individual amount in controversy requirement because Transamerica has pled that Plaintiffs' claims belong to the Plan rather than the individual Plan participants. Mem. [18] at 8-10; Mem. [38] at 10-12. Specifically, Plaintiffs contend that Transamerica's statements to this effect in its Notice of Removal [1] and Amended Answer [20] constitute judicial admissions that bar Transamerica from arguing that any of Plaintiffs' claims satisfy the individual amount in controversy requirement. Mem. [38] at 10-12. Plaintiffs' argument on this point is unavailing because Transamerica's statements do not relate to facts, but rather espouse their legal theory of the case. As such, Transamerica's statements are not judicial admissions. *See Blakenship v. Buenger*, 653 F. App'x 330, 335 n.15 (5th Cir. 2016) ( "The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case.") (quoting *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972)); *Boyte v. Lionhead Holdings*, No. 3:10-CV-1467-D, 2012 WL 2680022, at *4 (N.D. Tex. July 6, 2012) ("Judicial admissions generally [ ] are restricted to matters of fact which otherwise would require evidentiary proof, and therefore, do not include legal theories or conclusions[.]") (quoting *Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*, Nos. 06-04350, 06-05060, 06-05057, 2008 WL 3365520, at *5 n.2 (E.D. La. Aug. 8, 2008)).

costs. Transamerica has established CAFA's individual amount in controversy requirement and thus the general mass action provisions are satisfied in this case.

b.    Whether the local single event exclusion applies

(i)    Relevant law

A civil action that meets the threshold CAFA elements is nonetheless subject to remand if one of the exclusions set forth at 28 U.S.C. § 1332(d)(11)(B)(ii) applies. *See Rainbow Gun Club*, 760 F.3d at 407 (affirming district court's order remanding case where exclusion applied); *White v. Bastrop Energy Partners LP*, No. H-21-870, 2021 WL 4295320, at * 5 (S.D. Tex. Sept. 21, 2021) (remanding case where exclusion applied). The "local single event exclusion" excludes from the definition of a mass action an action wherein "all of the claims . . . arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State." 28 U.S.C. § 1332(d)(11)(B)(ii)(I); *see Rainbow Gun Club*, 760 F.3d at 408.

Before addressing whether this exclusion applies, the Court notes the parties' disagreement as to which party bears the burden of demonstrating its applicability. Transamerica contends that Plaintiffs, as the parties seeking remand, bear the burden of establishing that an exclusion or exception to CAFA jurisdiction applies, and cites several cases from district courts in the Fifth Circuit that have reached this conclusion. Mem. [26] at 8-9 (citing *Robertson v. Chevron USA, Inc.*, No. 15-874, 2016 WL 3667153, at *8 (E.D. La. July 11, 2016); *Hamilton v. Burlington N. Sante Fe Ry. Co.*, No. A-08-CA-132-SS, 2008 WL 8148619, at *3 (W.D. Tex. Aug. 8, 2008);

*Greco*, 992 F. Supp. 2d at 701; *Laffin v. Nat'l Football League*, 3:11-CV-345-M, 3:11-CV-248, 2011 WL 1396887, at *1 (N.D. Tex. Apr. 12, 2011)). Plaintiffs, on the other hand, maintain that the event or occurrence exclusion is part of the definition of a mass action in section 1332(d)(11) and, as such, Transamerica as the removing party bears the burden proving that this exclusion does not apply. Reply [38] at 2-3 (citing *Frazier v. Pioneer Ams. L.L.C.*, 455 F.3d 542, 546 (5th Cir. 2006); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007)).[5]

The Fifth Circuit was presented with this same question in *Rainbow Gun Club*. 760 F.3d at 408 n.3. It recognized that the removing party "has the burden of proving that the provisions of CAFA are satisfied," *id*. (citing *Hood*, 737 F.3d at 84-85), but that the party seeking remand "has the burden of proving the applicability of any exceptions to CAFA jurisdiction," *id*. (citing *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.,* 655 F.3d 358, 360 (5th Cir. 2011)). The court declined, however, to determine which party bears the burden of proving whether an exclusion to CAFA jurisdiction applies because it did "not affect the outcome" in that case. *Id*. The Court will follow the Fifth Circuit's lead in *Rainbow Gun Club* and decline to settle this dispute, because it would likewise not affect the outcome in this case.

(ii)     <u>The parties' arguments</u>

Plaintiffs argue that this case does not qualify as a mass action under CAFA,

---

[5] Neither case cited by Plaintiffs addressed this exclusion, but instead provided clarity on the burden of the party seeking remand based on an exception to CAFA jurisdiction. *See Frazier*, 455 F.3d at 546 ("the district court properly placed the burden on plaintiffs"); *Preston*, 485 F.3d at 797 ("the parties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction").

because the local single event or occurrence exclusion applies. Mem. [18] at 7. They assert that Transamerica acknowledged in its Notice of Removal [1] that the claims arise from the same event or occurrence by its statement that "[n]ot a single Plaintiff asserts any facts or legal claims that differ from the facts or legal claims asserted by any other Plaintiff." *Id.* (quoting Notice of Removal [1] at 4).

Transamerica responds that this fact supports rather than defeats its position that this Court has CAFA jurisdiction because mass actions "include claims involving 'common questions of law or fact,'" Mem. [26] at 9 (quoting 28 U.S.C. § 1332(d)(11)(B)(i)), and the mere fact that Plaintiffs raise common claims based on similar facts does not mean that they arise from a single event or occurrence, *id.* at 9-10. Transamerica further notes that the single event or occurrence exclusion is normally only implicated in environmental tort claims. *Id.* at 10-11 (collecting cases where district courts refused to apply this exclusion to claims outside of the context of environmental disasters). Transamerica also contends that this action does arise out of a single event or occurrence because Plaintiffs "allege multiple claims against more than one defendant based on different alleged acts and omissions over the span of many years, causing alleged injuries to 272 different Plaintiffs who admittedly reside in more than one State." *Id.* at 11-12.

In rebuttal, Plaintiffs maintain that the Fifth Circuit's decision in *Rainbow Gun Club* is outcome determinative, Reply. [38] at 3, and they differentiate the facts in this case from those cited by Transamerica in support of its argument that this exclusion is generally limited to environmental disaster actions, *id.* at 7-10.

13

(iii)    <u>Analysis</u>

After a thorough review of the record and relevant law, the Court concludes that its analysis begins and ends with the Fifth Circuit's decision in *Rainbow Gun Club*, where the plaintiffs had entered into oil, gas, and mineral leases with the defendant. 760 F.3d at 407. The plaintiffs filed suit in a Louisiana state court alleging that the defendant had breached its state-law duty to "act as a reasonable and prudent operator" of the well drilled pursuant to the leases when it imprudently allowed "extraneous water to enter the gas reservoir, greatly reducing the productivity of the [w]ell." *Id*. The plaintiffs raised five separate incidents of negligence that caused the failure of the well. *Id*. Invoking CAFA, the defendant removed the action to federal court, where a magistrate judge found that the single event or occurrence exclusion applied. *Id*. at 408. That decision was appealed to the Fifth Circuit. *Id*.

The Fifth Circuit analyzed the text of the statute, as well as the ordinary dictionary definitions of "event" and "occurrence," and looked to the relevant legislative history to support the ordinary meaning of these terms. *Id*. at 409-10. It concluded that a "singular event or occurrence . . . need not be precisely confined to a moment in time," and as such, these terms "are not generally understood to apply only to incidents that occur at a discrete moment in time." *Id*. at 409. The Fifth Circuit also reviewed and considered the decision of the United States Court of Appeals for the Third Circuit in *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270 (3d Cir. 2013), and found that "the single event or occurrence may also

14

be constituted by a pattern of conduct in which the pattern is consistent in leading to a single focused event that culminates in the basis of the asserted liability." *Id.* at 412.

The Fifth Circuit then applied its interpretation of this exclusion and found that the well's failure qualified as an event or occurrence within the meaning of the statute. *Id.* at 413. It rejected the defendant's argument that the alleged negligent acts were actually separate events, and instead found that the failure of the well was the result of "a number of individual negligent acts related to each other, all of which came together to culminate in the single event." *Id.* The court further noted that even though the exact moment that the failure occurred was unknown, this did not preclude a finding that the well's failure constituted a single event or occurrence within in the meaning of the statute. *Id.*

Here, the Complaint alleges that SRHS employed Transamerica to perform actuarial services and specifically "to determine the annual required contribution to be paid by SRHS to the Plan to ensure its funding status and financial integrity and to administer the Plan, including but not limited to providing reports to the Plan's participants about benefits they could expect to receive upon retirement." Compl. [1-2] at 14. The Complaint also avers that SRHS retained KPMG to audit "the Plan's financial statements to provide information about the Plan's present and future ability to pay benefits when due," and "[SRHS's] financial statements to provide information about SRHS's financial status, including but not limited to accounts receivable." *Id.* at 15.

15

Plaintiffs advance several causes of action but, in essence, they all arise out of their claims that Defendants made misrepresentations, omitted necessary information from reports transmitted to SRHS and to the Plan's participants, and made actuarial and accounting errors, repeated and similar negligent acts that were related and which combined to result in the Plan being underfunded. *Id*. at 17-43. Specifically, Plaintiffs allege that during this time period Defendants: (1) failed to disclose that they had a conflict of interest; (2) failed to disclose that they were authorized to pay their fees from the Plan; (3) failed to disclose that SRHS did not make its required annual contributions for several years; (4) failed to disclose the underfunded status of the Plan to its participants; (5) failed to disclose risks that were "reasonably anticipated to affect the Plan's future financial status;" (6) failed to provide clarity in preparing their reports; (7) failed to certify that that SRHS made its minimum Plan contributions; (8) failed to ensure that SRHS increased its contributions after it failed to make its annual contributions; (9) miscalculated SRHS's annual contribution to the Plan; (10) failed to ensure the financial stability of the plan; (11) directed misleading statements to Plan participants; (12) omitted information from the annual statements provided to Plan participants; and (13) made other actuarial and accounting errors. *See id*. at 20-23, 26-28. Plaintiffs assert that these acts and omissions combined to cause the Plan to be underfunded, to the point that it was set to be liquidated. *Id*. at 16.

The Court finds that the acts and omissions alleged in the Complaint constitute a sufficiently related, contextually connected "pattern of conduct" that

resulted in a single event or occurrence, namely the "catastrophic failure of the Plan." Reply [38] at 6. The Complaint alleges a specific incident giving rise to the litigation, when SRHS announced that it would freeze and liquidate the Plan, Compl. [1-2] at 16, and Plaintiffs' claims against Transamerica and KPMG arise from the Plan's failure, *see Rainbow Gun Club*, 760 F.3d at 412 ("[T]he exclusion certainly applies . . . to a single focused event that culminates in the basis of the asserted liability.").

The Complaint claims that Defendants committed a number of separate, individual acts and omissions that were both negligent and that breached their fiduciary duties, Compl. [1-2] at 20-23, 26-28, and which all led to the failure of the Plan, *id*. at 16. Specifically, Plaintiffs aver that Defendants concealed information from the Plan's participants, made continued misrepresentations about the Plan's financial stability, and made actuarial and accounting errors that all combined to reduce their retirement benefits. *Id*. at 15-16, 20-23, 26-28. Each act or omission is alleged to be its own failure, but Plaintiffs' claims do not arise from these individual incidents. Instead, Plaintiffs seek to recover the "retirement benefit losses" caused by the Plan's failure, which according to them arise from Defendants' conduct. *Id*. at 23. Accordingly, the Court finds that Plaintiffs' claims arise from a single event or occurrence "that resulted from the collective related acts" and omissions of Defendants. *Rainbow Gun Club*, 760 F.3d at 413. The "pattern of conduct" set forth in the Complaint is sufficient to meet the local single event exclusion.

Transamerica also maintains that Plaintiffs' claims do not fit within this

exclusion because courts have historically rejected attempts to apply it outside the context of environmental disasters. Mem. [26] at 10-11 (collecting cases). The Fifth Circuit rejected this same argument in *Rainbow Gun Club* where the defendant argued for a narrow definition of this exclusion. 760 F.3d at 410-11. The Fifth Circuit reasoned that even if the purpose of this exclusion was "specifically to keep local environmental torts out of federal court, there is no reason that the exclusion cannot also apply to other cases if those cases fit within its language." *Id.* at 411. Accordingly, the Fifth Circuit held that the local single event exclusion did not "apply only to a specific genre of claims." *Id.*

Transamerica cites several cases to support its position that the local single event exclusion is inapplicable because Plaintiffs "allege a variety of failures by multiple parties and non-parties stretching over years." Mem. [26] at 13 (citing *Addison*, 398 F. Supp. 3d at 14; *Robertson*, 2016 WL 3667153, at *9). The cases cited by Transamerica in support of this argument are similar to this case in that they both involved suits against multiple defendants who allegedly committed "a variety of failures" over several years, and in each case the district court held that the local single event exclusion did not apply. *See Addison*, 398 F. Supp. 3d at 14 (finding that the "emission of odors and chemicals from various sources, caused by various failures on the parts of various [d]efendants, at different times over a period of years, does not constitute a single focused event"); *Robertson*, 2016 WL 3667153, at *9 (finding this exclusion inapplicable where the plaintiffs "alleged injuries resulted from pipe-cleaning operations conducted over 34 years by several different

defendants").

Despite the similarities, these cases are distinguishable from Plaintiffs' claims in this case. The courts in *Addison* and *Robertson* found that the exclusion did not apply because neither set of plaintiffs alleged that a single event or occurrence caused their injuries. *See Addison*, 398 F. Supp. 3d at 14; *Robertson*, 2016 WL 3667153, at *9. Here, the Complaint alleges a single event or occurrence that is the basis of Plaintiffs' injuries and Defendants' liability: the Plan's failure. Compl. [1-2] at 16. The fact that the Complaint asserts claims against more than one Defendant does not affect the applicability of this exclusion. *See White*, 2021 WL 4295320, at * 5 (applying *Rainbow Gun Club* and finding that "[a]lthough there may be multiple acts by multiple actors, they lead to a single event or occurrence").[6]

In sum, the Court finds that CAFA's local single event exclusion applies, because the Complaint alleges "an ongoing pattern of conduct" on the part of Transamerica and KPMG "that was contextually connected" and which culminated in a single event or occurrence, the failure of the Plan. *See, e.g., Rainbow Gun Club*, 760 F.3d at 413. Because the Court finds that the local single event exclusion applies, it need not address Plaintiffs' remaining arguments for remand. Plaintiffs'

---

[6] Transamerica also appears to contend that that the second portion of this exclusion, that the event or occurrence "allegedly resulted in injuries in [Mississippi] or in States contiguous to [Mississippi]," is not satisfied. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(I); Mem. [26] at 12, n.17. This argument is unavailing because, as one district court in this Circuit has recognized, "[t]he local occurrence exception appears applicable regardless of the citizenship of the parties." *Hamilton*, 2008 WL 8148619, at *9; *see also Abednego v. Alcoa, Inc.*, No. 10-009, 2011 WL 941569, at *3 (D. V.I. Mar. 17, 2011) (finding this exclusion to apply "[d]espite the fact that a number of the plaintiffs subsequently moved away from the Virgin Islands, their property damages and personal injuries were incurred when on St. Croix"). The geographical requirement for this exclusion is met in this case because "the occurrence and injuries that are the root of the controversy arose" in Mississippi, the State where the action was filed. *Hamilton*, 2008 WL 8148619, at *9.

Motion [17] to Remand should be granted, and this matter remanded to state court.

2.    <u>Plaintiffs' Motion [17] for Costs and Expenses</u>

In addition to their request for remand, Plaintiffs also seek an award of costs and expenses, including reasonable attorney's fees incurred, pursuant to 28 U.S.C. § 1447(c). Mot. [17] at 4-5; Mem. [18] at 18. Section 1447(c) permits a court to order "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has explained that

> the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 534-35 (5th Cir. 2020) (applying this standard).

The Court cannot say that Transamerica lacked an objectively reasonable basis for seeking removal. The Notice of Removal [1] sufficiently alleged that this Court had jurisdiction under CAFA and relied on case law from this Circuit in arguing that the Court had jurisdiction over Plaintiffs' claims. *See* Notice of Removal [1] at 3-10. It was only after the Court's resolution of a disputed issue that it found that remand was warranted. Although the Court has ruled against Transamerica, it finds that a fee award would be inappropriate because Transamerica could have concluded "from [existing] case law that its position was not an unreasonable one." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th

Cir. 2000). Accordingly, Plaintiffs' request for costs and expenses, including attorney's fees, should be denied.

III.   CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.[7]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiffs' Motion [17] to Remand to the Circuit Court of Jackson County, Mississippi, is **GRANTED**. This civil action is **REMANDED** to the Circuit Court of Jackson County, Mississippi, and a certified copy of this Order of remand shall be immediately mailed by the Clerk of Court to the clerk of the state court pursuant to 28 U.S.C. § 1447(c). Plaintiffs' request for expenses and costs is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 29th day of March, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court lacks subject-matter jurisdiction over Plaintiffs' claims and because "federal jurisdiction [cannot] rest upon [a] . . . counterclaim" the Court lacks jurisdiction over Transamerica's Counterclaim or Plaintiffs' Motion [22] to Dismiss it. *Vaden v. Discover Bank,* 556 U.S. 49, 60 (2009).